Thomas Conville, Appellant, *v.* Sheridan Shook et al.,
Respondents.

When it appears that upon the settlement of an account a mistake occurred,
materially affecting the result, the account may be opened so far as
necessary to correct the mistake, and the rights of the parties re-adjusted.

Plaintiff entered into defendants' service for a term of years under an
agreement that he was to receive for his services a fixed salary, and, in
addition, ten per cent of the net profits of the business. In an action to
recover the percentage for the last year, it appeared that for each pre-
ceding year plaintiff had received the percentage of profits shown by
an account made out by defendants' bookkeeper, but that through mis-
takes on his part in making out the accounts, the profits as shown were
largely in excess of what they were in fact, and that these mistakes were
not discovered until after the expiration of the term. *Held*, that the
referee before whom the action was tried properly re-opened the settle-
ments so made, so far as necessary to correct the mistakes, and charged
plaintiff with the amounts he had received in excess of what he was
entitled to.

(Argued December 19, 1894; decided January 15, 1895.)

Appeal from judgment of the General Term of the Superior
Court of the city of New York, entered upon an order made
July 3, 1893, which affirmed a judgment in favor of defend-
ants entered upon the report of a referee dismissing the
complaint.

This action was brought to recover a certain percentage of
the profits of defendants' business of brewing and selling ales
and porter, which plaintiff claimed to be due to him as part
of his compensation for his services as brewer under a written
contract with defendants.

The following is the opinion in full:

"The plaintiff entered into the service of the defendants
as a brewer for five years from March 1, 1876, under a
written agreement which secured to him a salary of $3,600
per year, payable monthly, and in addition thereto ten per
cent of the net profits of the business, payable at the end
of each year. When this agreement was about to terminate
it was continued for five years more by another writing signed
by the parties and bearing date August 6th, 1880. The plain-
tiff during all the ten years was paid his salary and also at the

end of each year except the last, what was supposed to be his portion of the net profits of the business. The present controversy relates entirely to the plaintiff's claim for the ten per cent net profits for the year ending March 1, 1886. The cause of action stated in the complaint is a claim for the plaintiff's proportion of the net profits for that year alleged to amount to nearly seven thousand dollars. It appeared from an inspection of the defendants' books on their face that there was due to the plaintiff for his proportion of the net profits for the year a substantial amount, though much less than he claimed. But the defendants in their answer alleged in substance that during all the previous years while the contract was in force there had been paid to the plaintiff various sums of money as and for his proportion of the net profits of the business for those years. That the amounts so paid were computed by the bookkeeper in the defendants' employ, who had the sole charge of that branch of the business, and by the mistake of the bookkeeper in the manner of keeping the accounts were in excess of the sums justly due to the plaintiff for his share of the net profits, and that the mistake was not discovered by the defendants until after the contract had terminated. The defendants' contention was that the books were so kept that the net profits of the business were made to appear much larger than they actually were, and the plaintiff's share thereof correspondingly increased, so that the sums paid in excess of what should have been paid equaled or exceeded all just claims which the plaintiff had for his share of the profits for the last year.

" This was the issue in the case, and, from its nature, it was one of fact. On the trial before a referee this issue was found in favor of the defendants. He reported that during the previous years the plaintiff had been overpaid, and that the aggregate of such over-payments exceeded the plaintiff's claim for the last year. Judgment was ordered in favor of defendants, which has been affirmed on appeal. Although the dispute was largely in regard to a question of fact, yet the contention of both sides rested upon what appeared in the defendants' books, so that, unless it can be shown that the learned referee adopted some erroneous legal principle as a

basis for the inquiry, the general result at which he arrived ought not to be disturbed.

" The fundamental objection which the plaintiff makes to the action of the referee rests upon the proposition that it was error to open the settlements made by the parties in the previous years. Those settlements were the result of a mistake on the part of the bookkeeper which the defendants did not discover until about the time of the commencement of this action. In such a case the rule is well established that a settled account may be impeached and re-adjusted by proof of unfairness, fraud or mistake in law or fact. (*Theisser* v. *Denison*, 10 N. Y. 68; *Bruen* v. *Hone*, 2 Barb. 586; *Philips* v. *Belden*, 2 Edw. Ch. 1; *Welsh* v. *German Am. Bank*, 73 N. Y. 424; *Carpenter* v. *Kent*, 101 id. 591; *Samson* v. *Freedman*, 102 id. 699; *Wheadon* v. *Olds*, 20 Wend. 174; *Malcolm* v. *Fullarton*, 2 Term R. 645; *First Nat. Bank of Omaha* v. *Mastin Bank*, 2 McCrary, 438.) It may not be necessary in such cases to open the whole account, but the mistake can be corrected and the rights of the parties re-adjusted as to such mistake, and that is all that was done in this case.

" In changing the accounts appearing upon the books in such a way as to reduce the net profits of the business during the period of plaintiff's service, as these profits were shown by the books as actually kept, the learned referee adopted no erroneous principle, but, on the contrary, acted upon rules and principles obviously correct and just. The changes made were substantially these: Nearly $5,000, which had been paid out during the period covered by the inquiry for taxes and interest, had been entered by the bookkeeper to stock account, and thus the assets of the firm were to that extent increased, whereas it was really one of the expenses of the business, and should have been charged in the expense account, and, in ascertaining the total net profits for the ten years, it was so charged by the referee.

" The referee also found that during this period the firm had expended over $14,000 for repairing casks, which sum had been credited to cask account, and thus that part of the partnership property which consisted of casks was correspondingly increased. All new casks when purchased were properly

entered in the stock account, since they increased the property on hand, but expenditures for repairs was really a disbursement incident to the conduct of the business and to the extent of what was paid out for that purpose diminished the actual net profits.

" Something over $8,000 was charged off by the referee on account of bad debts and for rebates from the regular prices at which sales were entered in the books in certain special cases. The proof was sufficient to justify the finding of the referee that the debts so charged off were uncollectible and in fact worthless. It appeared that the firm had adopted the practice, during the years of plaintiff's service, of making allowances to their customers, or some of them, in the form of rebates from the scheduled prices at which their goods were sold. The percentage allowed in such cases varied as to different customers according to circumstances. One of the defendants had exclusive charge of this branch of the business. There was no general rule established by custom or by contract on the subject, and the allowances were necessarily arbitrary according to his best judgment in each case as the special circumstances seemed to render necessary, expedient or proper. The only criticism made by the plaintiff in regard to this item is not that the allowances were not actually made, but that they were excessive. It is not claimed that the defendant who had charge of the matter acted otherwise than in good faith and according to his best judgment. The practice is not unusual in other departments of business, and in recognizing the custom and the acts of the parties in that regard in this case, the referee did not sanction any illegal or erroneous principle.

" In arriving at the result, the referee charged off from the cost of the original plant ten per cent in each year for depreciation, which reduced the assets about $29,000. The plant had been carried for the ten years upon the books at the original cost, and the proof in regard to the usual custom of business and the propriety of its application to this case warranted the decision of the referee in respect to this item embraced in the controversy. There is some dispute as to the manner of

taking the inventory adopted by the defendants for the last year. The contract with the plaintiff provides that it should be made up in the same way as in previous years. In these years it was taken at the estimated selling price. It was taken for the last year at the cost price, but there was credited to the plaintiff his estimated share of the profits which would result from the sale of the goods then on hand, and the referee has found that this was a substantial compliance with the contract. Whether the inventory was correct or not was largely a question of fact. It may be that it was not taken strictly according to the contract, but if so the error could not change the result. The referee has found that, after correcting the errors in the accounts before referred to, there would be a balance against the plaintiff, resulting from over-payments, of about $1,000, and this amount would more than offset any additional share of the net profits that could possibly be awarded to the plaintiff if the inventory was adjusted according to his own contention.

"Moreover, the referee refused to allow the defendants in the account nearly $8,000 for rents of the property upon which the business was conducted, and which had not been charged upon the books to the expense account. The defendants owned the property, and the plaintiff in receiving the payments had the benefit of it to the extent of his interest in the net profits. The defendants in making up the account credited themselves with a sum equal to ten per cent upon the value of this property for each year. The referee declined to allow the claim upon the ground that there was no evidence before him to show that such was the proper sum to be allowed, holding that proof of the fact that the defendants owned the property, and its value, was not sufficient to warrant any deduction from what otherwise appeared to be the net profits on that account. This ruling was certainly sufficiently favorable to the plaintiff, and it is quite possible it might be changed upon a new trial.

"On the whole we think that the controversy was properly disposed of by the referee, and that the judgment should be affirmed, with costs."

*Ira Shafer* for appellant.

*Gratz Nathan* for respondents.

O'BRIEN, J., reads for affirmance.

All concur, except BARTLETT, J., dissenting, and HAIGHT, J., not sitting.

Judgment affirmed.