VIRGINIUS BALLARD et al., as Assignees of BRODIE L. DUKE et al., Appellants, *v.* ALVEN BEVERIDGE, Respondent.

1. CONVERSION — COMPROMISE OF ACCOUNT AS AFFECTING ACTION FOR — WHEN RESCISSION OF SETTLEMENT NOT A CONDITION PRECEDENT. An action for the conversion of stock fraudulently retained by an agent, to whom it was delivered for a particular purpose, is not barred by a compromise on the settlement of an account rendered by the agent in which the stock is stated to have been used for the specified purpose, where the compromise did not relate to that item, but only to the entirely independent item of compensation, and plaintiff relied upon the correctness of the defendant's statement as to the use of the stock and had no knowledge of its falsity until after the settlement; and a rescission of such settlement and a return of the property delivered by the agent to his principal in pursuance thereof is not necessary as a condition to the maintenance of such action since a mistake as to one item in an account may, upon discovery after the settlement of the account, be corrected and the rights of

the parties be adjusted in respect thereto without opening up the entire account.

2. DIRECTION OF VERDICT — CONFLICTING EVIDENCE. The direction of a verdict for defendant in an action for the conversion of stock in his hands as agent for a particular purpose is error where the evidence upon the question whether or not there had been a use of the stock by him for the authorized purpose is conflicting, and the plaintiff is not estopped by a settlement between them from litigating the question.

*Ballard* v. *Beveridge*, 65 App. Div. 616, reversed.

(Argued April 17, 1902; decided May 13, 1902.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered November 27, 1901, affirming a judgment in favor of defendant entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles F. Brown* for appellants. There has been no settlement or discharge of the cause of action alleged in the complaint for the conversion of 400 shares of stock. (*Gould* v. *Cayuga Bank*, 86 N. Y. 75; *Kley* v. *Healy*, 127 N. Y. 555; 5 Lawson's Rights & Rem. § 2567; 1 Am. & Eng. Ency. of Law, 94, 97; *Fuller* v. *Kemp*, 138 N. Y. 231; *Carpenter* v. *Kent*, 101 N. Y. 591; *Conville* v. *Shook*, 144 N. Y. 686; *Robinson* v. *Jewett*, 116 N. Y. 40; *Trow* v. *Shannon*, 78 N. Y. 446.)

*David McClure* and *Eugene L. Bushe* for respondent. By the uncontradicted evidence in this case there has been a clear accord and satisfaction between the parties. (*Vedder* v. *Vedder*, 1 Dem. 257; *McCreery* v. *Day*, 119 N. Y. 1; *Kromer* v. *Heim*, 75 N. Y. 574; *Morehouse* v. *S. Nat. Bank*, 98 N. Y. 509; *People ex rel.* v. *Bd. of Managers*, 96 N. Y., 640; *Fuller* v. *Kemp*, 138 N. Y. 231; *Jaffray* v. *Davis*, 124 N. Y. 164; *Wehrum* v. *Kuhn*, 61 N. Y. 623; *Sears* v. *Grand Lodge*, 163 N. Y. 374.) The accord and satisfaction is binding and cannot be set aside. (*Bruen* v. *Hone*, 2 Barb. 586; *Comer* v. *Mackey*, 73 Hun, 236; *Mollinbrock* v. *Meinhard*,

6 N. Y. Supp. 151.) There was a binding accord and satisfaction which has never been rescinded. The plaintiffs cannot rescind the compromise and accord and satisfaction without restoring Beveridge to his former position. This they cannot do, and hence this action cannot be maintained. (*Sinclair* v. *Neill*, 1 Hun, 82; *Bruen* v. *Hone*, 2 Barb. 586; *McMichael* v. *Kilmer*, 76 N. Y. 36; *Dusenbury* v. *Lehmnier*, 46 How. Pr. 417; *Gould* v. *Cayuga Bank*, 86 N. Y. 75; *Cobb* v. *Hatfield*, 46 N. Y. 533; *Wehrum* v. *Kuhn*, 61 N. Y. 623.) The accord and satisfaction is binding and. cannot be set aside. To set aside an accord and satisfaction it is necessary for the plaintiff to prove willful fraud, or mutual mistake of fact. (*Carpenter* v. *Kent*, 101 N. Y. 591; *Conville* v. *Shook*, 144 N. Y. 686; *Gould* v. *Cayuga Bank*, 86 N. Y. 75; *Cobb* v. *Hatfield*, 46 N. Y. 533.) The plaintiffs and their assignor have been guilty of *laches*. (*Bruen* v. *Hone*, 2 Barb. 595; *Graham* v. *Meyer*, 99 N. Y. 611; *Pierson* v. *McCurdy*, 33 Hun, 521.)

MARTIN, J. This controversy involves the question of the conversion by the defendant of four hundred shares of the common stock of the American Tobacco Company. That these shares originally belonged to the plaintiff Duke, and that they, together with others, were delivered to the defendant as Duke's attorney or broker to be used by him, so far as was necessary, as collateral security for loans to be procured by him for Duke, are facts not disputed in this case. The defendant insists that the stock in suit was used by him in Duke's business by delivering it to Hubbard, Price & Company, as he had authority to do, and, hence, there was no conversion of it. That on March 31, 1893, these shares of stock were delivered by the defendant as collateral security for a loan of fifteen thousand dollars procured for Duke of the firm of Hubbard, Price & Company is asserted by the defendant and denied by the plaintiffs. The plaintiffs' right to recover depended upon whether there was such a delivery. If so delivered, there was no conversion;

if not, there was. The evidence upon that issue was conflicting and such as required its submission to the jury. Therefore, unless the plaintiffs were prevented from litigating that question, it is plain that the court erred in directing a verdict for the defendant.

The defendant, however, seeks to uphold the judgment entered thereon upon the ground that there had been a compromise, settlement or accord and satisfaction between the parties of an account that included the shares of stock in question, and, hence, that the action could not be maintained without a rescission and a return of the property and money delivered and paid to the plaintiff Duke when such adjustment was made. The relation between the plaintiff Duke and the defendant was that of principal and agent. The property in suit was delivered by Duke to the defendant to be employed by him for a special purpose by virtue of the authority conferred upon him by a power of attorney. At the termination of the defendant's agency he sent to Duke what purported to be a detailed statement of his transactions in the business, which contained a large number of items, among which was one relating to the stock in question, wherein it was in effect stated that the four hundred shares in suit were, on the thirty-first of March, 1893, delivered to Hubbard, Price & Company as collateral for a loan for fifteen thousand dollars. The items of that statement of account were balanced by crediting to Duke $3,076.68, and the defendant's check for that amount was forwarded with the statement. After it was thus apparently balanced there was added below in a supplemental statement the balances thus found, Duke was charged for the compensation and disbursements of the defendant the sum of $25,839.03 and credited with eight hundred shares of stock retained by the defendant as the equivalent of his compensation and disbursements, and the account was again balanced. Upon receiving that statement, Duke at once objected to the supplemental portion relating to the defendant's compensation and the retention of eight hundred shares of stock,

and positively declined to allow him any such amount. At that time it was only to this particular portion of the statement that any objection was raised. The difference between the parties as to the defendant's compensation was finally adjusted, and he was paid fifty-five hundred dollars for his services and disbursements, instead of the amount claimed. There was then no claim by Duke that the four hundred shares in question had not been used in the manner stated, and the jury would have been justified in finding that he had no knowledge of any fact that would have led him to doubt or question the correctness of the defendant's statement in that respect. Subsequently, however, upon receiving a statement of the account of Hubbard, Price & Company, he found no credit for the four hundred shares stated to have been delivered to them as collateral, and then, for the first time, his attention was directed to the correctness of that item in the defendant's account. The plaintiff Duke at once called the defendant's attention to the situation, who refused to deliver the stock, and finally this action for its conversion was commenced. It is obvious that there was no examination or consideration of the items of the defendant's account before the alleged settlement, except those relating to his compensation and the eight hundred shares of stock retained by him.

Assuming, as we must on this appeal, that the jury might have found that the shares in question were not delivered to Hubbard, Price & Company, and that in that respect the defendant's account was false, known by him to be so, and that he intended to convert them to his own use, can it be properly said that the settlement was final and a bar to a recovery in this action, or that the plaintiffs can maintain this action only after a rescission of the settlement and a return of the property delivered by the defendant to the plaintiff Duke when it was made? We think not. Obviously, the relation between Duke and defendant was a fiduciary one. The latter was the mere agent of the former, and the title to the stock in question was in him, subject only to any lien the defendant had for his commissions or compensation. When the amount

of his compensation was adjusted and paid, it was clearly the duty of the defendant to surrender not only the shares he held as security therefor, but also the four hundred shares if they were in his hands, although he had falsely stated in the account rendered that he had delivered them to the firm of Hubbard, Price & Company. As it is evident that the considerations which resulted in the settlement between the parties related only to the disputed compensation of the defendant and the retention of eight hundred shares of Duke's stock as security therefor, that as to the other items he relied upon the statements rendered by the defendant, and that if the credit to the defendant for the four hundred shares stated to have been delivered to Hubbard, Price & Company was false and fraudulent as might have been found, that settlement was no bar to a recovery in this case. Nor was the defendant entitled to a return of the eight hundred shares he delivered, or of the blank notes signed by the plaintiff Duke and left with him for a special use, for which they were not required, as all that property belonged to Duke and the defendant had surrendered to him only that which in any event was his own. Where an agent, already compensated for his services, has surrendered to his principal only a portion of the property in his hands, it would be strange if he could resist a claim for the remainder retained by means of a false account, unless the plaintiff should redeliver to him property not his own, but belonging to the plaintiff, and upon which no lien in favor of the defendant existed. If the plaintiffs had sought to rescind the settlement as to the defendant's compensation, it is perhaps possible that they might have been required to return whatever he received by virtue of it. But that is not the case. There was no compromise as to the four hundred shares, and as we have already seen the plaintiffs merely seek to recover their own which the defendant was permitted to retain by reason of a false statement that it had been used in Duke's business. The plaintiff Duke did not discover the fact that the defendant's statement was false until after the question of compensation had been settled, and

at that time the defendant's account of his transactions with Duke was assumed to be correct.

The case of *Gould* v. *Cayuga County Nat. Bank* (86 N. Y. 75) and kindred cases relied upon by the defendant have no application to the facts in this case. In those cases the agreement for compromise was of the precise cause of action alleged in the complaint. Not so here. The cause of action alleged by the plaintiffs relates not to any matter that was in dispute upon that settlement, but to a portion of the defendant's account that was permitted to stand because of its falsity, of which Duke was ignorant, and which a jury might find that the defendant fraudulently made. In that settlement the right of the plaintiff Duke to require all of his stock in the defendant's hands to be returned to him was in no way involved. Manifestly Duke supposed that that had been done. Nor was Duke's right to the return of such stock at all affected by the amount of the defendant's compensation. Indeed, as the compensation of the defendant had not been agreed upon, it formed no essential part of his account of his transactions as his agent, and can hardly be said to be a proper part of such an account. The defendant's duty was to account to Duke for and to surrender to him all the property of the latter then in his hands, which was a matter entirely independent of his compensation. The validity and finality of that settlement as to compensation is in no way disputed by the plaintiffs. Nor is it at all involved in this action.

We think this case falls within the principle that where, after a settlement and adjustment of an account of the dealings between parties, a mistake as to one item is discovered, to recover which an action is brought, the commencement of such an action does not entitle the defendant to open the entire account, but the error may be corrected and the rights of the parties readjusted in that respect, and the defendant is bound by the account actually settled, unless he can show fraud in the settlement in respect to other items. (*Carpenter* v. *Kent*, 101 N. Y. 591; *Conville* v. *Shook*, 144 N. Y. 686,

688.)   In the latter case it was said : "The rule is well estab-
lished that a settled account may be impeached and readjusted
by proof of unfairness, fraud or mistake in law or fact.
(*Weisser's Admrs.* v. *Denison,* 10 N. Y. 68 ; *Bruen* v. *Hone,*
2 Barb. 586 ; *Philips* v. *Belden,* 2 Edw. Ch. 1 ; *Welsh* v.
*German-Am. Bank,* 73 N. Y. 424 ; *Carpenter* v. *Kent,* 101
N. Y. 591 ; *Samson* v. *Freedman,* 102 N. Y. 699 ; *Wheadon*
v. *Olds,* 20 Wend. 174 ; *Malcolm* v. *Fullarton,* 2 Term R.
645 ; *First Nat. Bank of Omaha* v. *Mastin Bank,* 2
McCrary, 438.)   It may not be necessary in such cases to open
the whole account, but the mistake can be corrected and the
rights of the parties readjusted as to such mistake."

No further discussion of this case is deemed necessary, as we
have reached the conclusion that there was no such compromise,
accord and satisfaction, account stated, *laches* or release, as con-
stituted a bar to the plaintiffs' action, and that the learned trial
court was not justified in directing a verdict for the defendant.
It follows that the judgment of the learned Appellate Division
affirming the judgment of the trial court should be reversed
and a new trial ordered, with costs to abide the event.

PARKER, Ch. J., O'BRIEN, VANN, CULLEN and WERNER, JJ.,
concur ; GRAY, J., not voting.

Judgment reversed, etc.