## PRICE v. STOUT.

(Supreme Court, Appellate Division, First Department.  June 12, 1903.)

1. ACCOUNTING—RECEIPTS—ACTION TO CANCEL—OFFER TO RETURN AMOUNT RECEIVED.
Where a complaint alleged that plaintiff furnished defendant a certain sum of money for disbursement in a certain venture, and that thereafter defendant furnished plaintiff an account of the expenditure of the money, in which he falsely and fraudulently represented that he had paid out a certain sum, for which he was given credit to which he was not entitled, and that plaintiff executed receipts showing that defendant was not indebted to him, it was not necessary to the statement of an equitable cause of action for plaintiff to offer to return the amount which he received upon the accounting in which the receipts were given.

Appeal from Special Term, New York County.

Action by Bruce Price against James N. Stout. From a judgment overruling a demurrer to the complaint, defendant appeals. Affirmed.

The complaint alleges that the following written agreement was made between the parties: "Bruce Price and Jas. N. Stout agree herewith to pool all their funds for the purchase of the capital stock of the Security Trust and Life Insurance Company, and divide the stock so purchased equally, share and share alike, together with the costs;" that, pursuant to the terms of said agreement, the plaintiff advanced and paid over to the defendant, as trustee, at various times and in various amounts, the sum of about $188,800, to be used for the purposes specified in said agreement; that the defendant, as trustee, did use and expend, pursuant to said agreement, a part of said money, and has in his hands a large balance, for which he has failed to account; that an accounting was had between the parties in relation to the money received by said defendant as trustee, and "upon said accounting the defendant falsely and fraudulently stated and represented to this plaintiff that he had expended the sum of forty-two thousand seven hundred and forty-nine $10/100$ dollars of said moneys for the purpose of paying the taxes for the year 1899 on the St. James building, situated at the corner of 26th street and Broadway, in the city of New York, which statement plaintiff at that time accepted and believed to be true, and thereupon executed and delivered to the defendant a receipt, of which the following is a copy:

"I hereby certify and acknowledge that I have this day received from James N. Stout the transfer of 459 shares of the capital stock of the Security Trust & Life Insurance Company of the par value of $50 per share, which I hereby agree to be the value of the said shares, and that said transfer is in full payment, satisfaction and discharge of all my claims and demands against him for the shares of stock due from him to me by reason of our joint transactions with and concerning the said Security Trust & Life Insurance Company. This settlement does not include the indebtedness of the said Stout to me of about ($17,000) seventeen thousand dollars, more or less, remaining in his hands over and above the cost of the said joint enterprise, which is the only claim and demand that I have against him.
                                                        "Bruce Price.
"Witness: Vincent Rosemon."

It is further alleged "that subsequently and as a part of the same transaction the plaintiff herein executed and delivered to the defendant another receipt, of which the following is a copy:

"Received from James N. Stout three hundred shares of the capital stock of the Security Trust and Life Insurance Company at par and agreed value of fifty dollars ($50) per share the same having been this day delivered by him to me as a payment on account of a balance of $15,000 due me from the said James N. Stout.                                 Bruce Price.
"In presence of Samuel H. Halstead."

The complaint then alleges:

"Sixth. Upon information and belief, that, at the time of the making of the said statements and representations by the defendant in relation to the payment of the taxes on the St. James building out of the said sum of money, the said defendant knew the same to be false, and made the same for the purpose of inducing this plaintiff to accept his account, and to execute and deliver to him the foregoing receipts.

"Seventh. This plaintiff, relying upon such statements and representations as being true and correct, did accept said account, and did execute and deliver the foregoing receipts.

"Eighth. Plaintiff further alleges, on information and belief, that the said taxes for the year 1899 on the St. James building were not paid out of said fund by the said James N. Stout as said trustee, but were paid by the St. James Company, a corporation organized under the laws of the state of New York, and that the said St. James Company on or about the 22d day of August, 1902, obtained a judgment against the Security Trust & Life Insurance Company, the owner of the St. James building, for the sum of $42,749.10, with interest and costs."

The judgment demanded is: "First, that the said receipts bearing date about March 2 and March 20, 1901, respectively, be declared null and void; second, that an accounting be had between this plaintiff and this defendant of his actions as trustee aforesaid; third, that upon the completion of the said accounting the defendant be decreed to pay over to this plaintiff such sum as shall be ascertained to be due to the plaintiff from the defendant; fourth, that the plaintiff may recover his costs and disbursements in this action; fifth, that the plaintiff may have such other and further relief, or both, in the premises, as may be just and equitable and agreeable to the practice of this court, and as the nature of the case may require."

The defendant demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was overruled, and from the interlocutory judgment so entered the defendant appeals.

Argued before HATCH, McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

L. Laflin Kellogg, for appellant.
Jacob Halstead, for respondent.

O'BRIEN, J. The single question upon this appeal is whether the complaint is defective in not averring that the plaintiff offered to restore what he had received at the time he signed the receipts upon the accounting between the parties. The appellant relies upon the well-settled rule which in the Ency. of Pleading & Practice, vol. 18, p. 829, is thus stated:

"In suits for the rescission and cancellation of contracts, the court applies the familiar maxim of equity, of almost universal application, that he who seeks equity must do equity. The plaintiff will not be permitted to repudiate his contract, and still retain the benefits which he has derived from it; and his desire and willingness to restore what he has received must appear in the bill of complaint, otherwise he will have no standing in a court of equity."

See, also, Duff v. Hutchinson, 57 Hun, 152, 10 N. Y. Supp. 857. Therein it was held (headnote):

"An instrument of general release cannot be restricted in its operation to those frauds which were actually in the mind of the party giving it when it was given, in a case in which such party subsequently finds that he was ignorant of the existence of certain other frauds, which it was not intended by him that the instrument should cover, and that he ought to have been more careful in giving it."

And it was further held that, in an action to procure a rescission of the contract, it was necessary to offer in the complaint to restore what had been obtained upon the settlement, and as the consideration for the giving of the release.

So, here, if the complaint had shown that there was a dispute as to the amount due, and an adjustment and a settlement between the parties, and that the plaintiff had executed the receipts in consideration of obtaining 459 shares of stock in full settlement, then the rule invoked would apply. It will be noticed, however, that the allegations present no such cause of action, but show that there was an accounting between the parties, and as the result of such an accounting the plaintiff received the shares of stock at a fixed value of $50 per share. The transaction is no other or different than if, instead of stock, he had received an amount of money equivalent to the value of the shares at the price fixed. It does not appear that there was any dispute as to the amount due the plaintiff, and therefore what the defendant was obligated to pay was ascertained and determined between them without any compromise or settlement. In other words, the complaint alleges that the defendant received from the plaintiff a certain sum of money for disbursement in a certain venture, and that thereafter he furnished the plaintiff with an account, which was accepted as true, and, for the balance due the plaintiff, the defendant, instead of money, gave the stock, at the agreed price of $50 a share. It is then alleged that on such accounting the defendant falsely and fraudulently represented that he had paid out the sum of $42,749.10 for taxes on the St. James building, and was entitled to a credit on account of such payment; that it was because the plaintiff relied upon the truth of this statement and representation that he accepted the account as true and correct, and executed the receipts; and that the plaintiff, finding that such taxes were paid not by the defendant, but by another, brings this action to prevent the defendant from getting the benefit of a credit which was secured by his false and fraudulent representation.

The distinction between an agreement of settlement, where, as the result of a compromise of conflicting claims, some property or thing of value has been parted with (in which case, if the action is brought to set aside the settlement, it is necessary to restore or offer what has thus been received), and a transaction as herein outlined, where, as the result of an accounting, the parties have agreed upon the amount to which they are respectively entitled, and it thereafter appears that one of the parties thereto, by false and fraudulent representations, has secured an unwarranted credit for himself, is obvious; and the reason which in the former instance requires a restoration or an offer to restore what was received is in the latter instance entirely wanting.

We think that the cases cited and relied upon by the learned judge at Special Term as showing that the complaint was sufficient are directly in point, and particularly Ballard v. Beveridge, 171 N. Y. 194, 63 N. E. 960. Therein it was sought to maintain an action for conversion of stock fraudulently retained by an agent, and it appeared that the defendant had furnished a statement upon which a compromise was made, and the plaintiff relied upon the correctness of the statement as to the use of the stock. When, however, he obtained

knowledge of the falsity of the statement as to the disposition of this particular stock, he brought the action for a conversion, and it was insisted that his remedy was to rescind the settlement and tender back what he had received, but it was held that:

"A rescission of such settlement, and a return of the property delivered by the agent to his principal in pursuance thereof, is not necessary as a condition to the maintenance of such action, since a mistake as to one item in an account may, upon discovery, after the settlement of the account, be corrected, and the rights of the parties be adjusted in respect thereto, without opening up the entire account."

It is attempted to distinguish that case as an authority upon the ground that it was an action at law, whereas this is a suit in equity. In an action at law, however, the requirement is much stricter, for, when a restitution is necessary, it must be tendered before suit brought, whereas, in equity, all that is required is that in the complaint there should be an allegation of a tender, or a willingness to return what was received, upon the trial. The reason upon which the rule is based is the same in an action at law as in a suit in equity. Where, upon the facts, restitution is necessary, it must be made in both forms of action; the only difference being, as pointed out, that at law the complaint must allege a tender back before action brought, while in equity an allegation of a willingness to restore upon the trial is sufficient. Although Ballard v. Beveridge, supra, was an action at law, what was therein said is, in principle, applicable—that:

"Where an agent already compensated for his services has surrendered to his principal only a portion of the property in his hands, it would be strange if he could resist a claim for the remainder, retained by means of a false account, unless the plaintiff should redeliver to him property not his own, but belonging to the plaintiff, and upon which no lien in favor of the defendant existed."

The inferences from the complaint here are that there was, after crediting the defendant with the payment of the taxes upon the St. James building, a certain amount due the plaintiff, and the delivery to him of the 549 shares, at the agreed value of $50 a share, left still unpaid him the sum of $17,000, which, as shown by the second receipt, was disposed of by the defendants delivering the 300 additional shares of stock at the agreed value of $50 per share. It is clear that, whatever may be the result of this action, the plaintiff is entitled to retain what he has received; and, in addition, he should, upon proof of the allegations of his complaint, receive an amount equivalent to what should originally have been paid him, had the defendant not falsely represented that he had expended the sum named in payment of taxes on the St. James building.

We think, therefore, that as it was neither necessary to restore nor to make an offer to restore before action, nor to so allege in the complaint, the complaint is not defective on this ground, and the Special Term was right in overruling the demurrer. The interlocutory judgment should accordingly be affirmed, with costs, with leave to defendant to withdraw demurrer and to answer upon payment of costs in this court and in the court below. All concur