William C. Swinburne *vs.* Elizabeth H. Swinburne.

APRIL 1, 1914.

Present:  Johnston, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1)  Releases.  Construction.*

The rules of construction applicable to a release are the same at law and equity, the primary rule being that the intention of the parties, as shown by the instrument itself in its entirety and not by matters outside of the writing must govern.   It is to be construed from the standpoint of the parties at the time of its execution and evidence is admissible to show their surrounding circumstances.

The relations between the parties; the nature and character of the existing disputes, the actions then pending and their subject matter and the claims to be investigated and passed upon may all be considered in determining the construction of the release.

*(2)  Releases.*

The personal and financial relations between the parties at the time of the execution of a release, including the provisions of the instrument itself as to the transfer of photographs and letters, showing the purpose on the part of the maker to surrender all tokens of a past family intimacy, considered and held, that at the time of its execution it was intended to effect a complete severance and termination of all relations between the parties, and to be a general one and not limited to a particular transaction.

*(3)  Releases.*

By an instrument in the usual form the maker released all claims both at law and equity which he had against the releasees in their individual capacities and as the executrices of  X  and against the estate of  X  which he had whether as legatee under the will of  X  or in any other capacity.

*Held,* that from the language of the instrument and from the surrounding circumstances it was intended to be a general release and not limited to the legacy.

*(4)  Releases.*

By will a legacy was left to A in trust for B.    After the receipt of the legacy by A, B entered into an agreement with A that she might have the use of the money and keep as her own all interest and income until such time as the indebtedness of  B to A theretofore or thereafter incurred had been paid.

Subsequently B gave A a release "of all claims which he ever had, then had or ought to have for or by reason or means of any matter or thing from the beginning of the world to the day of date."

*Held,* that the release was broad enough to extinguish all rights of  B  to said legacy.

BILL IN EQUITY for conveyance of property and for an accounting. Heard on appeals of both parties. Portion of decree of Superior Court annulled.

BAKER, J. Complainant brings his bill of complaint against the respondent individually and as administratrix upon the estate of Mary A. Swinburne, late of Newport, in this State, deceased, by which he seeks to compel her to convey to him certain real estate alleged to have been held in trust for him by her deceased mother, the said Mary A., and in which he also asks for an accounting by the respondent as to certain personal estate held by her said mother in trust for him.

It is now admitted in behalf of the complainant that he has "failed to make out his case as to the real estate" and that "it appears from the testimony that the deed of conveyance made by the complainant to Mary A. Swinburne was an outright sale for valuable consideration." That leaves for consideration therefore only the question of the liability of the respondent for an accounting as to said personal estate.

The essential allegations of the bill relative to this branch of the case are substantially as follows, namely: that Pastora E. Humphrey, of said Newport, died September 1st, 1899, leaving a will which was duly admitted to probate, of which will the sixth paragraph is as follows: "6th. I give to Mr. Robinson Monk, of said Thomaston, the income of five thousand dollars, payable semi-annually during his life. At his decease I give said five thousand dollars to Mrs. Mary A. Swinburne aforesaid in trust for the benefit of her adopted son, William C. Swinburne;" that said Robinson Monk died January 20, 1892; that thereafter said Mary A. Swinburne received said legacy of five thousand dollars and held the same in trust for the complainant until her death; that in April, 1894, he conveyed his interest in said legacy to said Mary A. Swinburne in consideration that she then and there agreed with him to pay the sum secured

by a certain mortgage deed, principal and interest, and that upon receiving payment "from said legacy or the income thereof or in any way for any amounts that were due or might become due to the said Mary A. Swinburne from the complainant," she "would reconvey to him his interest in said legacy of what might remain thereof;" that this agreement was in writing, signed by both of them; that the said Mary received the income on said legacy until her death, and that he believes that she received sufficient money to reimburse herself for all indebtedness which the complainant owed her at the time of her decease; that said Mary died July 15th, 1910, and that the respondent is the daughter and sole heir of the said Mary A. Swinburne, deceased, and the duly appointed and qualified administratrix on her estate, wherefore he prays for an account.

In her answer the respondent denies the allegations of said bill as to the agreement of April, 1894, and among other things says that said Mary, from time to time prior to 1897, made large advances of her own money to the complainant and that during all that time he was largely indebted to said Mary; that on February 1, 1892, by an instrument in writing under seal, he covenanted and agreed with the said Mary that she should have the use of said legacy and should keep as her own all interest and income thereof until his present and future indebtedness to her should be paid; that thereafter the said Mary on the strength of said covenant and agreement made further large advances of money to the complainant; that the whole of such advances largely exceeded the amount of said legacy, and that none of said advances were ever repaid to the said Mary; that on September 17, 1897, William J. Swinburne, husband of said Mary A., died leaving a last will and testament whereupon the complainant, although not an heir-at-law of said William J. Swinburne, attempted to contest the probate of said will, and that the said Mary A. and the respondent "being desirous of finally and forever ending all relations between them or either of them and the complainant,

paid him the sum of five hundred dollars," and in consideration whereof the complainant on November 19, 1897, executed to the said Mary A. and to the respondent a general release. She also sets up that the complainant is barred from any recovery against her as administratrix by virtue of the statutes of this State relative to the proof of claims, and the bringing of actions against the estate of deceased persons, and that he is also barred by his laches.

The replication asserts that the advances by the said Mary A. to the complainant did not exceed eight hundred dollars; denies the allegations of the answer as to the covenant and agreement of February 1, 1892, and declares that said release was given solely in consideration of the sum of five hundred dollars paid out of the estate of said William J. Swinburne; that said sum was bequeathed to complainant by said William J. Swinburne's will, and that said release was demanded as a bar to a threatened contest of the will of said William J. Swinburne and that no other actions, claims or demands were then discussed or considered; that he was not obliged to prove his claim as a debt due from the estate of said Mary A. Swinburne and that he had not been guilty of laches.

Upon this record eighteen issues of fact were framed and agreed upon.

After hearing before the Presiding Justice of the Superior Court the following was entered as a final decree.

"FINAL DECREE.

"This cause came on to be heard on Bill, Answer, Replication and Issues of Fact duly framed, and was argued by counsel, and thereupon it appearing

"(1) That as to the property in Bristol, in the County of Bristol, in said State, formerly belonging to the complainant and described in the first paragraph of the Bill of Complaint, the court finds that the conveyance thereof by the complainant to Mary J. Swinburne, mother of the respondent, Elizabeth H. Swinburne, was absolute and for a

valuable consideration and was in no sense conditional or in mortgage, in trust or as security; it is therefore, ORDERED, ADJUDGED AND DECREED that since the date of said conveyance, viz.: April 19, 1894, the complainant has had, and now has, no claim in or to said real estate or the rents, income or profit thereof, but that the same belongs absolutely to the respondent as the sole heir-at-law of said Mary J. Swinburne, deceased.

"(2)  That the release pleaded by the respondent in her answer does not include the trust fund of five thousand dollars ($5,000), which is mentioned in the Bill of Complaint, and it is therefore ORDERED, ADJUDGED AND DECREED that said release is no defense to said Bill nor to any part thereof.

"(3)  That as to the plea of the respondent in her answer that the claim of the complainant for an accounting for the sum of five thousand dollars ($5,000), being a legacy of that amount under the will of Pastora E. Humphrey, of which the complainant was the beneficiary and said Mary J. Swinburne, the Trustee, after the death of Robinson Monk, that the claim of the complainant with respect thereto is barred because his claim, if any, was that of a mere creditor of the estate of said Mary J. Swinburne, and that he had not presented said claim in the office of the clerk of the Probate Court of the city of Newport (that being the court having jurisdiction of the settlement of the estate of said Mary J. Swinburne, late of said Newport, deceased), within one year after the first publication of the notice of the qualification of the respondent as administratrix of said estate of Mary J. Swinburne, the court finds that as to the sum of $2,500 which was deposited in the Industrial Trust Company (Newport Branch), and as to the interest thereon from the date of the withdrawal thereof from said bank, viz.: from December 31, 1906, said plea is good and said sum of $2,500 so deposited and withdrawn was dissipated by said Mary J. Swinburne in her lifetime and the complainant did not present his claim within said

year and the said sum so dissipated, with interest thereon from the date of withdrawal from said bank is barred, but no more thereof, and it is so ordered adjudged and decreed.

"(4) That as to the accounting for which the complainant prays, the court finds that the complainant is entitled to an accounting of so much of said trust fund as is not barred under the paragraph of this Decree marked '3,' and the court having fully heard the parties with respect to said accounting, and itself taken the accounting, hereby ADJUDGES AND DECREES that said account at the date of the entry of this decree stands as follows:

ELIZABETH H. SWINBURNE,
In account with
WILLIAM C. SWINBURNE.

DEBIT.

1892.

Feb. 1. (Being trust fund paid to Mary J. Swinburne under will of Pastora E. Humphrey, for benefit of William C. Swinburne.) ................ $5,000 00

1901.

May 17. Interest on trust fund to this date, being date of deposit of proceeds of Sprague mortgage ........... 2,787 50

1906.

Mar. 21. Interest on $2,500 from May 17, 1901, to this date, being date of discharge of Taudvin mortgage. . 125 00

1907.

Jan. 1. Bank interest on $2,500 from May 17, 1901, to date, being date of dissipation of $2,500 .......... 572 81

1907.

Jan. 1. Bank interest from Mar. 21, 1906, being date of discharge of Taudvin mortgage to date of investment of proceeds in Wharf property ...... 77 25

1913.

Feb.  15.   Being date of entry of this decree...          975 00

Above being interest from date of investment of
$2,500 in Wharf property to date of entry of
decree...................................          9,537 56

CREDIT.

Note of Sept.   5, 1890.............    $850 00
Note of Oct.    5, 1891.............     250 00
Note of Jan.   30, 1892.............     400 00
Note of July   12, 1892.............     500 00
Note of Oct.    5, 1894.............     300 00
                                      ─────────
                                                          2,300 00

Interest on several principals of above notes
from their respective dates to Sept. 2, 1895,
being date of admission by complainant of
indebtedness to Mary J. Swinburne of more
than $5,000...........................          467 25

1895.

Sept.   3.   Complainant's debt to Mary J. Swin-
burne as per his acknowledgment
in letter of that date, obtained by
adding to sum of notes, sum re-
quired to comply with admission..          2,700 00

                                                        ─────────
                                                         $5,467 25

       Amount forward.............. $5,467 25

Interest on $5,000 from Sept. 2,
1895 to Feb. 15, 1913, date of entry
of decree.......................    5,237 50

1907.

Feb.   1.   Dissipated............    2,500 00
                                      ─────────     $13,204 75

Complainant indebted to respondent in the sum
of..................................          $3,667 19

"(5)   It is further ORDERED, ADJUDGED and DECREED that as the complainant is indebted to the respondent he is not entitled to a Decree for the payment of any money from the respondent to him.

"(6)   It is further ORDERED, ADJUDGED and DECREED that the complainant recover his costs to be taxed by the clerk.

"Entered as the Decree of Court this 15th day of February A. D. 1913."

From this decree both parties appealed, and the case is before this court on both appeals.   The complainant states eight and the respondent six reasons of appeal.

The first two reasons of the respondent's appeal are as follows: "(1)   That said decree is erroneous in this: that it adjudges that the release pleaded by this respondent in her answer is no defence to the bill of complaint nor to any part thereof; (2)   Because said Superior Court should have adjudged said release to be a complete defence to the whole of said bill."   We will consider these two reasons first and together.

(1)   The rules of construction applicable to a release, are the same at law and equity, the primary rule being that the intention of the parties as shown by the instrument itself in its entirety and not by matters outside of the writing, must govern.   It is to be construed from the standpoint of the parties at the time of its execution and evidence is admissible to show their surrounding circumstances.   34 Cyc. 1075, 1076.   "In that view the relations between the parties, the nature and character of the existing disputes, the actions then pending and the subject matter of them and the claims to be investigated and passed upon may all be considered in determining the construction of the release." *Sherburne* v. *Goodwin*, 44 N. H. 271, 276.

The relations, personal and financial, at the time the release was given between the complainant and said Mary A. Swinburne and the respondent, will appear by a state-

ment of some of the important facts relative thereto as disclosed by the evidence in the case.

The complainant had been taken into the family of William J. Swinburne, who at one time was mayor of the city of Newport, when one year old, and had been brought up and treated as a member of the family. Although bearing the name Swinburne, he was never legally adopted and there is no evidence that he was a relative of the family. He became twenty-one years of age in 1887, and then left the Swinburne household, going west to Colorado, where he remained until 1890. He was in Newport in 1890, but went therefrom in the summer of that year to the west again, where he remained until 1893, and where according to one of his letters he had lived a life of wildness and dissipation and as to the Swinburnes had resorted to "misrepresentations of all kinds to allay suspicions" regarding his past and to revive hopes for his future. Between September 25, 1890 and October 5th, 1894, he gave Mrs. Swinburne five promissory notes, aggregating twenty-three hundred dollars for moneys advanced to him by her. Mrs. Swinburne received said legacy of five thousand dollars in trust February 1, 1892. By an instrument in writing of the same date the complainant covenanted with her as follows:

"Whereas the late Pastora E. Humphrey in her will bequeathed (after the death of Mr. Robinson Monk, now deceased), Five Thousand Dollars to Mary A. Swinburne in trust for me, William C. Swinburne; and whereas said Mary has made large advances of money to me which ought to be repaid; Now, therefore, I covenant and agree with said Mary, for the consideration aforesaid, that she shall have the use of said Five Thousand Dollars and take and keep as her own all the interest and income thereof until such time as the whole my indebtedness to her whether heretofore or hereafter incurred shall have been paid, and this covenant shall continue after her decease for the benefit of her estate if need be.

"As Witness my hand and seal on this February the first A. D. 1892.

WILLIAM C. SWINBURNE    (Seal)"

The complainant's letters to Mrs. Swinburne show that in addition to the amounts covered by said promissory notes other large sums had been advanced to him by her. Their relations in April, 1895, are evidenced by the following paper:

"NEWPORT, R. I., April 13, 1895.

"This is to certify that I have this day received from Mrs. Mary A. Swinburne the sum of seventy-five dollars, which I promise to pay on demand, and in consideration of same I hereby agree to never ask her for another dollar under any circumstances whatever, either directly or indirectly, and also agree not to come upon her premises or communicate to her in any way until such time as I may do so at her own solicitation and when I can come bearing an honorable name and reputation in the community.

W. C. SWINBURNE.

Witnessed:

Anna Watten."

In July, 1895, the complainant was arrested for a serious assault committed in Providence, for which he was afterwards indicted, tried and convicted. In one of his letters he apologized for the disgrace brought thereby to the family name. In his letter of September 2, 1895, asking for assistance he refers to his having assigned said legacy, principal and interest to her and says "which will make over $6,000 I am paying you back of the money you have let me have." Under date of November 25th, 1895, he says: "Now in consideration of the fact that you have received a greater part, if not all of the money that I have borrowed from you for the past five or six years, I am going to ask you if you will send me my watch." In his letter of August 31, 1896, to Mrs. Swinburne asking for assistance he writes,

"I know I am nothing to you and have no right to anything from you."

William J. Swinburne died September 13, 1897, testate. In a note dated September 21, 1897, from the complainant to the respondent, he says that he had kept his word as to not going upon the Swinburne premises up to the time of Mr. Swinburne's death. He was given a legacy of five hundred dollars by Mr. Swinburne's will. When the will was offered for probate he entered his appearance by counsel to contest the same. According to the testimony of the respondent, which is not denied, there was a hearing before the court relative to his right to contest and after that he withdrew his appearance; whereupon he sought the immediate payment of the legacy. There were conferences between the counsel of the complainant and of the respondent and her mother which resulted in the payment of five hundred dollars by them to him and of his giving a release, of which this is a copy:

(3)     "*Know all men by these presents* that I, *William C. Swinburne*, of the city and county of Newport in the State of Rhode Island, for and in consideration of the sum of five hundred dollars to me paid by *Mary A. Swinburne* and *Elizabeth H. Swinburne*, both of said Newport, the receipt whereof is hereby acknowledged, do hereby remise, release and forever quitclaim unto the said *Mary A. Swinburne* and *Elizabeth H. Swinburne* and their respective heirs, executors and administrators all and all manner of actions, causes of action, debts, dues, claims and demands, both at law and in equity, which against the said *Mary A. Swinburne* and the said *Elizabeth H. Swinburne*, both jointly and severally in their individual capacities and also in their capacity of executrices of the last will and testament of *William J. Swinburne*, deceased, and against the estate of the said *William J. Swinburne*, deceased, I, the said *William C. Swinburne*, whether as legatee under the last will and testament of the said William J. Swinburne or in any other

capacity, ever had, now have or ought to have for or by reason or means of any matter or thing from the beginning of the world to the day of the date of these presents.

"*And for and* in consideration of the premises I, the said *William C. Swinburne* herewith assign, set over and deliver to them the said *Mary A. Swinburne* and *Elizabeth H. Swinburne* two photographs, one of which is a picture of the said Elizabeth H. Swinburne and myself, in sitting postures and the other of which is a picture of the aforesaid William J. Swinburne (in a standing posture) with the said Elizabeth H. Swinburne (in a sitting posture) and another lady (in a standing posture). And I do hereby declare that the said two photographs are the only pictures in my possession or under my control of any member of the family of the late William J. Swinburne or of any relative of his.

"*And in* further consideration of the premises I, the said *William C. Swinburne*, herewith assign, set over and deliver to them the said *Mary A. Swinburne* and *Elizabeth H. Swinburne* two letters dated, respectively, August 16th, 1892, and April 23rd, 1893, written to me by the said William J. Swinburne, one letter written by the said William J. Swinburne, to one D. N. Rothemel, dated August 16th, 1893, two letters dated, respectively, July 30th, 1893 and July 13th, 1894, from the said William J. Swinburne to my wife, twenty-one letters written to me by the said Mary A. Swinburne, one letter dated May 28th, 1896, to B. A. Hamilton, written by the said William J. Swinburne, 'per E. H. S.,' and three letters written to my said wife by the said Mary A. Swinburne. *And I* do hereby declare that I have not in my possession or under my control any other letter or letters written either to me or to my said wife by the said William J. Swinburne or by the said Mary A. Swinburne or by the said Elizabeth H. Swinburne.

"*In witness whereof,* I hereto set my hand and seal this 19th day of November, 1897.

WILLIAM C. SWINBURNE    (Seal)

Signed and sealed
and   delivered
in presence of
Frank F. Nolan."
"STATE OF RHODE ISLAND &c.
          "NEWPORT, SC.

"In Newport in said County and State on this 19th day of November, 1897, personally appeared William C. Swinburne, known to me and known by me to be the person executing the foregoing instrument and acknowledged the said instrument to be his free act and deed, and at the same time and place the said *William C. Swinburne* also personally appeared before me and made oath that the facts set forth in the foregoing instrument signed by him are true.   Before me,

FRANK F. NOLAN,
*Notary Public.*"

This instrument is at the same time a release and an assignment of certain photographs and letters and an affidavit.   Examining in its entirety so much thereof as purports to be a release in order to ascertain from it the intent of the parties thereto there appears to be nothing by way of recital or reference to entitle it to be regarded as anything other than a general release unless the words "as legatee under the last will and testament of the said William J. Swinburne" are to be construed as limiting the discharge to the particular claim of the legacy.   Aside from these words the language is as comprehensive as it could well be. It includes "all and all manner of actions, causes of action, debts, dues, claims and demands, both at law and in equity." It runs to them as individuals, jointly and severally, and as executrices of the will of William J. Swinburne.   It releases to them all of his rights against them and against the estate of said William J. Swinburne which as legatee under said will "or in any other capacity" he ever had, then had or ought to have "for or by reason or means of any matter or

thing from the beginning of the world to the day of the date"
of said instrument.

In *Dunbar* v. *Dunbar*, 5th Gray, 103, a release was given
"of and from all claims, demands, actions and causes of
action which I now have against him whether in my own name
or in the name of other persons held by me or owned by me;
and particularly from the debt and costs in two actions now
in the Court of Common Pleas," naming them.  The court
held that it was a general release; that it was "not limited
to the two claims for which actions were pending."  See,
also, *Kirchner* v. *New Home Co.* 135 N. Y. 182.

If the surrounding circumstances, as already referred to,
are considered, including as an additional circumstance the
provision of the instrument of release for the transfer by the
complainant to Mrs. Swinburne and Miss Swinburne,
of the family photographs and letters in his possession,
accompanied by the statements therein by him, namely,
"I do hereby declare that the said two photographs are the
only pictures in my possession or under my control of any
member of the family of the late William J. Swinburne or
of any relative of his," and "I do hereby declare that I
have not in my possession or under my control any other
letter or letters written either to me or to my said wife by
the said William J. Swinburne or by the said Mary A.
Swinburne or by the said Elizabeth H. Swinburne," as
showing the purpose on his part to surrender all tokens of
a past family intimacy and friendly interest, we find that
they all clearly point to a then existing intention to effect
a complete severance and termination of all relations between
him and them.

The language of the instrument and the surrounding cir-
cumstances therefore both plainly warrant the conclusion
that the release was intended to be a general one and not
limited, as claimed, to the legacy.

(4)     It is suggested, however, that the release did not relate
to or affect complainant's right to the trust fund on the
ground that his rights therein had not accrued or matured.

If there be any force in this suggestion, it must grow out of the complainant's covenant of February 1, 1892, to Mary A. Swinburne and their dealings thereunder by which his rights of possession and enjoyment were postponed.

The complainant cities several cases as supportive of this claim. On examination it appears that most of them are not in point. Among them, however, is *Drake* v. *Starks*, 45 Conn. 96. On page 99, the court clearly states the law thus: "If the demand existed when the release was given it was barred; if it did not, but originated then, or subsequently, it was not." In that case A made a general assignment to B for the purpose of paying A's debts and of returning the surplus, if any, to A. The last of the property was sold by B and a note payable in instalments secured by mortgage was taken for the purchase money. A's liabilities were all paid, leaving a surplus. Before the final instalments of the mortgage note were due A and B executed an instrument under seal whereby they each released "to the other all obligations, claims and demands whatsoever." B received the subsequent instalments on the note and A sued to recover them. The court held that plaintiff's claim "did not come into existence by reason of anything that took place between the parties at the giving of the release," . . . "nor did the claim subsequently arise." On the contrary, B's liability to account to A for the property received and sold by him existed from the time of the assignment, and inasmuch as A's demand existed when the release was given, the release discharged it. See, also, *Cash* v. *Freeman*, 35 Me. 483, where it is held that a receipt in full "may operate upon existing claims and demands, although a present right of action upon them may not have accrued; while it would not operate as a bar to claims not then existing."

The claim in this case against the respondent rests entirely upon the reception by Mary A. Swinburne on February 1, 1892, in trust for the complainant of the legacy of five thousand dollars under the Humphrey will. It did not come

into existence with the release or subsequently. It was competent for him to release his interest therein, principal and interest, whether accrued or to mature in the future. Notwithstanding his covenant of February 1, 1892, he always had the right to an accounting from the trustee; and under his covenant, if it had the effect of a mortgage or pledge, he had the right to redeem at any time by paying his indebtedness to her. As a matter of fact these rights were more valuable in 1897 than now, if complainant's indebtedness then exceeded the amount of the legacy, as such excess would naturally be greater now. Under these conditions, his release of all actions, claims and demands which he ever had, then had or "ought to have for or by reason or means of any matter or thing from the beginning of the world to the day of date" thereof, is broad and comprehensive enough, in our judgment, to extinguish all of his rights in and to said legacy.

While not in point in all respects the following cases are cited as pertinent in some aspects in considering the rules of construction applicable to the present case. *Deland* v. *Amesbury Co.*, 7 Pick. 244; *Hyde* v. *Baldwin*, 17 Pick. 303; *Merrifield* v. *Baker*, 11 Allen, 43; *The Cayuga*, 59 Fed. 483; *Kansas City and O. R. R. Co.* v. *Hicks*, 30 Kansas, 288; *Slayton* v. *Hemken*, 91 Hun. 582; *Van Rensselaer* v. *Albany & W. S. R. R. Co.*, 62 N. Y. 65; *Arnold* v. *Park*, 8 Bush. (Ky.) 3 and *Sherburne* v. *Goodwin, supra.*

We are of the opinion therefore that the release pleaded covers the trust fund in question and is a complete bar to the suit of the complainant. Having reached this conclusion it becomes unnecessary to further consider the appeals of the complainant and respondent and the reasons alleged in support thereof as these reasons would only become of importance when following a finding that the release is not a defence to the bill.

So much of the decree entered by the Superior Court as precedes paragraph (2) is affirmed (excepting that the name Mary J. Swinburne should be changed to Mary A. Swinburne

in two places); the remainder thereof is disaffirmed and annulled. The respondent is entitled to have embodied in the decree to be entered, the finding that said release is a complete bar to the prosecution of this suit and that the bill should be dismissed.

The respondent on Monday, the 6th day of April, 1914, at ten o'clock A. M., may present to this court a form of decree to be entered in the Superior Court modifying the decree appealed from in accordance with the foregoing opinion.

*James A. Williams*, for complainant.
*Comstock & Canning, Patrick P. Curran*, for respondent.