131 A.2d 814 (1957)
Michael LA BELLE
v.
Jack DI STEFANO et ux.
Ex. No. 9660.
Supreme Court of Rhode Island.
May 15, 1957.
A. Louis Rosenstein, Leo L. Jacques, Nathan E. Pass, Providence, for plaintiff.
S. Thomas Cotroneo, Providence, for defendants.
*815 ANDREWS, Justice.
This is an action of assumpsit for extras in connection with a building contract. The case was tried in the superior court by a justice thereof who rendered a decision for the plaintiff. The defendants excepted to this decision and the case is before us on that exception and fifty-two others.
The plaintiff claimed seven extras. The original contract price was $8,800. The plaintiff admitted he had received that price plus $800 on account of the extras. He testified that the extras amounted to $2,570. Deducting from that figure the admitted payment of $800, his claim was reduced to $1,770. The trial justice further deducted $850 from the $1,770 and entered a decision for $920.
The defendants admitted that there were some extras. They claimed that some of the asserted extras were not in fact extras; that as to the admitted extras the price was too high; that they had paid for some labor and materials for which plaintiff should give them credit; and that the payment of $800 in addition to the foregoing compensated plaintiff. They also relied upon a general release.
Since we are satisfied that the release was a complete defense, we shall refer only to that part of the record which deals with that document. The release reads as follows:
 "Release
For: Contractor, Michael Iabello [sic]
House: at 35 Intervale Street
 North Providence, R.I.
 We The Undersigned Are Releasing Stock and Labor For The Above Mentioned.
 Mohawk oil Service E. O. Cardin
Plumbing & Heating John Rotondo Greenville Lumber Finish Lumber
Tile Work Joseph R. Ronzio Releaseing all claims for Payment in
 full to Mr. jack & Mrs. Mary Di
Drain Layer Michael Iacobbo Stefano on Building 35 Intervale
Frank Lasorsa Plasttrs Ave Lymansville No. Prov. As General
J. Cordente (Lathing) Contractor
 Michael J. La Belle
Prisco's Metal Works Arthur C. Prisco 55 Mildred St
C. E. Taylor Interior Painter & Papering Lymansville R. I.
 [italics ours]
Exterior Paint Work Angelo Giordano Jr. May 8, 1952 Check #290"
Brewster Bldg. Materials Building Materials
Co.
 May 2, 1952
By Anthony Rossi
Stoughton Supply & Building Materials
Lumber, Inc.
5/5/52 M.M. Byer
W. Sweeney Insulation 5-6-52
The notation "May 8, 1952 Check #290" was put on by Mrs. DiStefano.
*816 The plaintiff advanced several reasons why he was not barred by this release. He said it did not release defendants for the extras. The house was begun in 1951 and plaintiff testified that after he signed the release he did no work on it except to install some blinds, which he did not claim were extras. He admitted writing and signing that part of the release which affects him. Had he intended to leave the extras out of the release, he should have so provided therein.
The plaintiff also claimed the release covered only mechanics' liens. It is clear that as far as the subcontractors, laborers, and materialmen are concerned this was the ordinary mechanics' lien release, but after these parties had signed, the plaintiff wrote in the words we have italicized on the right-hand side just above his signature and received a check for $2,200. Furthermore, he admitted that Mr. DiStefano said "he was ready to pay me for everything." Mr. DiStefano testified that plaintiff stated the full amount owed was $2,600 and that defendants accepted that figure but it was agreed that they should retain $400 to cover claims of those who had not signed the release. Although plaintiff was called in rebuttal, he did not deny this testimony. The plaintiff also admitted that he received $200 later. The defendants claimed that they were forced to pay much more than the $200, and there is no doubt that they paid at least another $200.
The plaintiff testified that this document "was prepared by the plumber, a friend of Mr. DiStefano's. * * * When the plumber wanted money from DiStefano or rather from me and when I asked Mr. DiStefano to make his first payment. He said he would have to have a release for that purpose from all subcontractors." The payment of $2,200 was not the first payment. Long before that plaintiff had received approximately $7,000. Furthermore, this testimony does not help plaintiff because therein he was referring only to the subcontractors.
On redirect the plaintiff was asked: "Did you get any explanation from Mr. or Mrs. DiStefano as to why these signatures, including yours, were wanted on this paper?" He answered: "Yes. They said they had to have a release from me to show that the subcontractors would not attach them for payment after I got my money to pay them." Apparently plaintiff used the word "attach" to refer to asserting mechanics' liens. The statement is consistent with the interpretation we have placed upon the release. It clearly shows that he was to be paid, but before receiving his pay, the subcontractors would have to release their liens.
The defendants moved for a nonsuit at the end of plaintiff's case. The trial justice denied this on the ground that there was some ambiguity in the release, but he did not say what that ambiguity was. In his decision the trial justice did not mention the release. Although neither plaintiff nor the trial justice commented upon it the phrase "As General Contractor" may have seemed to the latter to create an ambiguity. At that stage of the proceedings the trial justice may have been justified in treating the release as ambiguous, but when he came to his decision he should have resolved the ambiguity against plaintiff who admitted he drew his release. In Gilman v. Murphy, 67 R.I. 149, where the document was admittedly ambiguous, the court, at page 154, stated: "The language and punctuation are the complainant's, through her agent. It was within her power to express the meaning, for which she now contends, in clearer, if not unmistakable, terms. As the stipulation was drawn by complaiant's representative, it is to be construed more strongly against her."
It could be said that the use of the words "As General Contractor" indicated that plaintiff was simply doing what the others were doing, namely, releasing his mechanics' lien. This, however, avails plaintiff *817 nothing because he then and there wrote out a general release of all his claims against the defendants, thus resolving any doubt that might be created by the quoted words.
The plaintiff's release is in general terms and is apt and adequate to cover both the principal contract and the extras. It was written by him, and we see nothing in the surrounding circumstances which we have outlined to limit its application. In Swinburne v. Swinburne, 36 R.I. 255, at page 262, 90 A. 121, at page 124, the court stated at page 262: "The rules of construction applicable to a release, are the same at law and equity, the primary rule being that the intention of the parties as shown by the instrument itself in its entirety and not by matters outside of the writing, must govern. It is to be construed from the standpoint of the parties at the time of its execution and evidence is admissible to show their surrounding circumstances." It is because of the last sentence of this quotation that we have considered the surrounding circumstances.
In Myron v. Union Railroad Co., 19 R.I. 125, 32 A. 165, in considering a release for personal injuries, the court stated, 19 R.I. at page 125, 32 A. at page 165: "The general rule that oral evidence will not be received to add to or vary the terms of a written contract applies to releases as well as other written instruments. If parties have put their contract into writing, the written instrument is to be regarded as the only evidence of the contract as finally concluded: oral evidence of what was said or done during the negotiations will not be admitted either to contradict what is written or to supply terms with respect to which the writing is silent. The purpose of the rule is to enable parties to make their written contracts the only evidence of their undertakings and to protect themselves against the hazard of uncertain oral testimony in respect to their engagements. A moment's consideration will serve to show how highly important the rule is to the security of contracting parties, if indeed it is not indispensable." This, of course, is the general rule and it should not be eroded by fine distinctions. There is no suggestion of fraud or overreaching. The plaintiff was an educated and experienced person, and every reason behind the parol evidence rule dictates that this release should bar his suit. Since the release is a complete defense, we need not consider the defendants' other exceptions.
The defendants' exception to the decision is sustained, and on May 22, 1957 the plaintiff may appear before this court to show cause, if any he has, why the case should not be remitted to the superior court with direction to enter judgment for the defendants.
PAOLINO, J., not participating.