<hr/>

BUTTERFIELD et al. v. WOODMAN.

In re BUTTERFIELD et al.    In re NATIONAL BOAT & ENGINE CO.

(Circuit Court of Appeals, First Circuit.    May 25, 1915.)

Nos. 1103, 1104.

1. BANKRUPTCY ☞181—VALIDITY OF LIENS—PLEDGE OF BONDS FOR INVALID CONSIDERATION.

A bankrupt corporation was formed to take over the property and business of a number of others. One of the constituent companies had executed a trust deed to claimant, which by agreement was not recorded. The president of such company was one of the promoters of bankrupt and became its president, and claimant became one of its directors. The property was conveyed to bankrupt as free of incumbrance, on a secret agreement be-

<hr/>

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tween the promoters and claimant that bonds of bankrupt would be sub-
stituted for the trust deed, which agreement was carried out; the other
directors having no knowledge of the transaction or of the trust deed.
*Held*, that the trust deed was invalid as against the bankrupt, and its
surrender did not constitute a valid consideration for the delivery of
the bonds, and that such delivery was voidable for the further reason that
it constituted a fraudulent preference of a director at a time when the
bankrupt was insolvent and known to be so by claimant. .

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 259, 260,
271, 273, 274; Dec. Dig. ☞181.]

**2. BANKRUPTCY ☞181—VALIDITY OF LIEN—PLEDGE OF MORTGAGE BONDS BY
CORPORATION.**

A pledge of its mortgage bonds by a bankrupt corporation as security
for notes of another corporation, whose property bankrupt had taken over
with an assumption of its indebtedness, *held* valid.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 259, 260, 271,
273, 274; Dec. Dig. ☞181.]

**3. BANKRUPTCY ☞164—PROVABLE DEBTS—SURRENDER OF "PREFERENCE."**

A bankrupt corporation was indebted on notes to banks and others,
indorsed by claimant, and also secured by a pledge of its mortgage bonds.
Claimant paid the amount due on the notes, which, with the bonds, were
transferred to him. *Held*, that payments made by bankrupt on the notes
within four months prior to the bankruptcy, and when insolvent, without
the knowledge of claimant, and without knowledge on the part of the
holders of the insolvency, did not constitute voidable "preferences," which
claimant was required to surrender before proving either the notes or
bonds.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 267; Dec.
Dig. ☞164.

For other definitions, see Words and Phrases, First and Second Series,
. Preference.]

**4. BANKRUPTCY ☞334—SECURED DEBTS—NECESSITY OF PROVING.**

A creditor of a bankrupt corporation, whose debt is secured by a valid
pledge of its mortgage bonds, is not required to prove his claim as a gen-
eral creditor to entitle him to have his bonds participate in the mortgage
fund.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 501–507;
Dec. Dig. ☞334.]

**5. BANKRUPTCY ☞205—VALIDITY OF LIENS—RIGHT OF TRUSTEE TO CONTEST.**

A trustee in bankruptcy, to whom mortgage bonds of the bankrupt have
been pledged as security for the purchase price of property sold by him,
has such an interest as entitles him to contest the validity of other
bonds, which, if allowed, would share in the mortgage fund.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 234, 303;
Dec. Dig. ☞205.]

Appeal from, and Petition to Revise Action of, the District Court
of the United States for the District of Maine; Clarence Hale, Judge.

In the matter of the National Boat & Engine Company, bankrupt;
Walter I. Woodman, trustee. From orders disallowing claims of Wil-
liam W. Butterfield and others (216 Fed. 208), claimants appeal, and
petition to revise. Reversed in part, and petition dismissed.

William D. Washburn, of Chicago, Ill., and William Carpenter, of
Muskegon, Mich. (Williamson, Burleigh & McLean, of Augusta, Me.,
on the brief), for appellants.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Robert T. Whitehouse, of Portland, Me. (Albert S. Woodman and Woodman & Whitehouse, all of Portland, Me., on the brief), for appellee.

Before PUTNAM, DODGE, and BINGHAM, Circuit Judges.

BINGHAM, Circuit Judge. This is an appeal from a decree of the District Court for the District of Maine, in a bankruptcy proceeding, disallowing a proof of claim for $88,000 of bonds, and from a refusal to allow claims on $32,000 of bonds, and on $36,456.40 of notes, found to be valid obligations of the bankrupt, until certain alleged preferences are restored to the bankrupt estate.

[1] The circumstances with regard to the $88,000 of bonds are substantially as follows: In January, 1909, the Racine Boat Manufacturing Company, a Michigan corporation, doing business in that state, had notes outstanding against it to the amount of $160,000, on which the claimant Butterfield was indorser, and, in order to secure him for his indorsements, a trust deed or mortgage of the company's property was executed and delivered to him. The trust deed was never recorded. It was withheld from record for the reason that, if recorded, it was believed it would impair the credit of the company, and it was only intended to be availed of by the claimant in case the company was on its "last legs." But, as it does not appear that any creditors of the Racine Company were misled by its being withheld from record, or that any credit was procured by the company in reliance upon the fact that its property was unincumbered, the original purpose that actuated the parties in withholding it from record seems to us unimportant.

In the summer of 1910, W. J. Reynolds, president of the Racine Company, J. Q. Ross, its attorney, and H. S. Beardsley, a promoter, conceived the idea of taking over the property and business of the Racine Company, and that of several other boat companies and individuals, and forming a corporation to be known as the National Boat & Engine Company. In pursuance of this plan, options were procured upon the plant and business of the Racine Company, and of other corporations and individuals. In September, 1910, the National Boat & Engine Company was organized under the laws of the state of Maine, and the properties upon which options had been procured, including the Racine Company, were transferred to it. These properties were appraised, and, on the basis of their appraisal, the stockholders in the old companies and the individual owners were to be paid in preferred stock and bonds of the National Company. The arrangement was that they should receive bonds at par, equaling 20 per cent. of the tangible assets transferred, and preferred stock equaling 80 per cent. of those assets. The good will, patents, and trade-marks transferred were not treated as tangible assets, but, on the basis of their appraisal, common stock of the new company was to be issued in payment therefor. All the debts of the companies and of the businesses of the individual owners were assumed by the National Boat & Engine Company.

Soon after the organization of the National Company, a resolution was adopted authorizing the issuance of bonds to an amount not

exceeding $3,000,000, to be secured by a first mortgage running to the Astor Trust Company of New York, as trustee, and covering all the property, real and personal, present and future, of the corporation. These bonds were authorized for the purpose of "furnishing additional capital and of assisting in the purchase of manufacturing properties and equipment." The mortgage was executed, and on January 18, 1911, was accepted by the trustee. Six hundred and ninety-eight thousand dollars of bonds were issued under this mortgage. Of these, $333,000 were deposited as collateral to secure obligations of the company; the $88,000 and $32,000 of bonds here in question constitute a part of that number.

The property of the Racine Company was transferred to the National Company by warranty deed and bill of sale, in which no mention was made of the outstanding trust deed held by the claimant. The claimant knew this, and it was understood between him and the promoters of the National Company that no mention of it should be made, either in the deed, bill of sale, or the prospectus of the National Company that was to be issued, and upon which the bonds and preferred stock were to be sold. The reason for this was that it was secretly arranged between the claimant and the promoters that bonds of the National Company should be issued to secure him for his indorsements upon the obligations of the Racine Company, which the National Company had assumed. In furtherance of this understanding, confirmed by subsequent agreements relating to the same matter between Butterfield and Reynolds, in which Reynolds purported to act as president for both the Racine and the National Companies, bonds of the National Company to the amount of $88,000 were delivered to Cross, Vanderwerp, Foote & Ross, as trustees, to secure Butterfield on his indorsements of the notes of the Racine Company, then amounting to about $41,000. Reynolds was also holden as indorser upon these obligations. The petition in bankruptcy was filed against the National Company August 28, 1911. The bonds were delivered in May, 1911, and within four months of the filing of the petition.

In the proof of claim for the $88,000 of bonds, the consideration alleged is the surrender by Butterfield of the trust deed of January, 1909. The trustee in bankruptcy contends that the trust deed is void, and was not a sufficient consideration for the transfer of the bonds, and that the transfer of the bonds was voidable under well-known principles of equity, and as a preference under section 60b of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 562 [Comp. St. 1913, § 9644]). While the trust deed was known to be outstanding by Reynolds and the other promoters of the National Company, the evidence discloses that, in pursuance of the secret agreement between them and Butterfield, its existence was not made known to the board of directors of the National Company or its executive committee during the life of the company; and, as we are satisfied such was the fact, we are of the opinion that the company cannot be charged with the knowledge of Reynolds and the other promoters, although they were officers of the company, and that the trust deed was not a valid incumbrance on the property purchased from the Racine Company as

against the National Company, and did not constitute a valid consideration for the delivery of the bonds.

At the time the bonds were delivered, Butterfield was a director in the National Company, and the referee in bankruptcy and the District Court have found that the National Company was then insolvent, and that Butterfield knew it to be so. The evidence fully warrants these conclusions, and they meet our approval. The validity of the mortgage, as to the personal property included therein, is in controversy; but it appears that, even if the mortgage should be held to include all of the property, real and personal, of the National Company, it would be inadequate to pay the outstanding bonds, not including those here in question, and that the $88,000 of bonds, if allowed, would not reduce the assets of the bankrupt estate available to pay the claims of the general creditors. If, in view of these facts, the transfer would not be voidable as a preference under section 60b of the Bankruptcy Act (Continental Trust Co. v. Chicago Title Co., 229 U. S. 435, 444, 33 Sup. Ct. 829, 57 L. Ed. 1268; Root Mfg. Co. v. Johnson, 219 Fed. 397, 401, 135 C. C. A. 139), nevertheless the title of the claimant to these bonds cannot be sustained, for it would be inequitable and a fraud upon the other bondholders to allow the claimant, a director of the company, to prefer himself by appropriating property of the company to secure an antecedent debt on which he was holden, at a time when the company was insolvent (Richardson v. Green, 133 U. S. 30, 10 Sup. Ct. 280, 33 L. Ed. 516; Bradley. v. Farwell, Fed. Cas. No. 1799; State Bank of Chicago v. Idaho-Oregon Light & Power Co. [D. C.] 219 Fed. 583, 590; Clay v. Towle, 78 Me. 86, 2 Atl. 852; In re Brockway Mfg. Co., 89 Me. 121, 35 Atl. 1012, 56 Am. St. Rep. 401; Symonds v. Lewis, 94 Me. 501, 48 Atl. 121).

[2] We will now consider the rights of the claimant under the $32,000 of bonds and the $36,456.40 of notes, which the District Court found to be valid obligations of the National Company, but declined to allow until certain payments made by the bankrupt were returned to the bankrupt estate. These claims are based on the following notes and bonds:

The note of the Racine Company to the National Lumberman's Bank for $10,456.40, with interest, to secure which the National Company had pledged $12,000 of Astor Trust Company bonds.

The note of the Racine Company to Mary E. McCracken for $9,000, with interest, to secure which the National Company had pledged $10,000 of Astor Trust Company bonds.

The note of the Racine Company to the Hackley National Bank for $10,000, with interest, to secure which the National Company had pledged $10,000 of Astor Trust Company bonds.

The note of the Racine Company to George Boyce for $4,000, with interest—no security.

The note of the Racine Company to the Old National Bank for $3,000 and interest—no security.

All of the notes were indorsed by Butterfield, except those to Boyce and the Old National Bank, and as to them he stood as guarantor.

The notes were taken up by him in fulfillment of his obligation, and, together with the bonds, were assigned to him.

[3] The alleged preferences consisted of the following payments, made within four months of the filing of the petition in bankruptcy: One of $1,543.50 to the National Lumberman's Bank, on the first note above described; one of $1,000 to the Old National Bank; and one of $1,000 to the National Lumberman's Bank, to take up a note given by Butterfield to the bank for the accommodation of the National Company, and which the National Company had assumed and agreed to pay.

It is thus seen that the payments in question were not made upon the bonds, but upon the notes which the bankrupt had assumed, and upon which the claimant was holden as indorser, or stood in the relation of guarantor or surety for the National Company, and that the payments were made, not to the claimant, but to the holders of the notes. No contention is made that the holders of the notes knew that the National Company was insolvent. If it be conceded that the claimant knew the company was insolvent, the evidence does not satisfy us that he knew of the payments to the holders of the notes at the time they were made, or that they were brought about by his procurement. It is true that the claimant was benefited by these payments, but every payment made within four months before the filing of a petition in bankruptcy is not a voidable preference within the meaning of section 60b of the Bankruptcy Act; and the payments here in question, having been made to the holders of the notes, who did not know that the company was insolvent, and the claimant not being aware of the transactions at the time the payments were made, and not having procured them to be made, they are not voidable preferences within the meaning of the act, and the $32,000 of bonds and the notes should have been allowed.

[4] Furthermore, if the payments on the notes could be found to be voidable preferences under section 60b, that would not furnish a reason for refusing to permit the $32,000 of bonds to be allowed. The mortgage was executed and the bonds were delivered more than four months prior to the filing of the petition in bankruptcy. The claimant does not seek to have the bonds allowed against the general assets of the bankrupt, but against the property set apart by the mortgage to secure the bonds, and whether they are or are not permitted to share in the distribution of this fund will neither increase nor diminish the assets available to general creditors. Indeed, the right of the claimant to have these bonds participate in the distribution of the mortgage fund is in no way dependent upon his right to prove an unsecured claim or an unsecured balance on a partially secured claim against the general assets; and, such being the case, the Bankruptcy Act furnishes no ground for not permitting the bonds to be allowed and to participate in the distribution of the fund set apart by the mortgage to secure them. Ward v. First National Bank of Ironton, 202 Fed. 609, 612, 120 C. C. A. 655; Courtney v. Fidelity Trust Co., 219 Fed. 57, 63, 134 C. C. A. 595; Yeatman v. Savings Institution, 95 U. S. 764, 767, 24 L. Ed. 589.

[5] The trustee in bankruptcy was rightly permitted to appear and contest the claim arising out of the $88,000 of bonds. It appears that all the property of the bankrupt was sold by the trustee under an order of the District Court, free and clear of the Astor Trust Company mortgage and of all other liens upon the property, for the sum of $250,000; that $105,000 was paid in cash, and the balance secured by a pledge of Astor Trust Company mortgage bonds to the amount of $300,000; that the dividends received on these bonds out of the bankrupt estate were to be applied in payment of the purchase price, and if the dividends were more than sufficient to pay this balance, the overplus was to be delivered to the purchasers. If, therefore, the trustee, as such, had no interest entitling him to appear and defend against the allowance of the claim—a question not considered—the facts above disclosed show that, as pledgee of the $300,000 of bonds as security, he had a material interest in the controversy which entitled him to appear and defend against the claim.

Whether the testimony of Reynolds, the president of the National Company, taken under section 21a of the Bankruptcy Act, was legally admissible as evidence on the claims here in controversy, it is unnecessary to consider. The evidence was excluded by the referee, and in making up the record for review of the findings and rulings of the referee by the District Court it was stipulated between counsel for the trustee and the claimant that all the evidence legally admitted by the referee on the proof of claim for $88,000 of bonds might also be used for the purpose of determining the other claims here in issue, and that no further evidence should be offered or used for the purpose of the hearings and the determination of the claims, including the claim on the $88,000 of bonds. In view of this agreement, the admissibility of the evidence becomes a moot question.

In No. 1103, the decree of the District Court disallowing the claim on the $88,000 of bonds is affirmed. As to the claims on the $32,000 of bonds and the notes, the decree is reversed, the case is remanded to the District Court, with directions to enter a decree in accordance with this opinion, and the appellants recover their costs of appeal.

In No. 1104, the petition to revise the action of the District Court in matter of law is dismissed, without costs.