JOHN R. DUFF, Appellant, *v.* WILLIAM J. HUTCHINSON AND GEORGE H. KENNEDY, Respondents.

*Action to rescind a contract — not maintainable where it appears that the plaintiff cannot make restitution — rule at law and in equity — reformation of a general release.*

In proceedings to procure a rescission of a contract, a distinction exists between the rule in equity and the rule at law, in that, in the former it is not necessary to tender restitution before the action is brought, but it is necessary, in a suit in equity, to offer restitution in the complaint, and if it appears that the plaintiff is incapable of making restitution, then an action for the rescission of the contract will not be sustained.

An instrument of general release cannot be restricted in its operation to those frauds which were actually in the mind of the party giving it, when it was given, in a case in which such party subsequently finds that he was ignorant of the existence of certain other frauds which it was not intended by him that the instrument should cover, and that he ought to have been more careful in giving it. It may be set aside. but it cannot be restricted because of fraud, where the party knew the nature of the instrument which he executed and there was no mutual mistake.

Appeal by the plaintiff from a judgment, entered in the office of the clerk of the county of New York on the 18th day of September, 1888, dismissing the plaintiff's complaint upon the merits, with costs, after a trial at a Special Term held in the county of New York.

*E. W. Powers*, for the appellant.

*J. H. Choate & W. B. Putney*, for the respondents.

Van Brunt, P. J.:

This action was brought to have a certain general release executed by the plaintiff in favor of the defendants limited and confined in its operation and effects to three specific matters and transactions between the parties, and for an accounting between the parties as to all other matters or transactions between them.

It appeared upon the trial that the defendants were copartners doing business as stockbrokers and bankers, and had been such for five years and more preceding the 31st of December, 1881 ; and that the defendants during such period transacted business for the plaintiff in buying and selling stocks and bonds, in the course of which the defendants received from the plaintiff large sums of money and large amounts of stocks and bonds, and paid out for the plaintiff large sums of money and charged him with divers sums as interest and commissions on purchases and sales.

On the 31st of December, 1881, the said firm dissolved and a settlement was made between the copartners, and one of the defendants withdrew entirely from the business; a summary statement of all transactions between the plaintiff and defendants up to the time of such dissolution was made and delivered to the plaintiff, but the plaintiff then, or shortly thereafter, claimed that it was not correct. Between the 1st of January and the 2d of March, 1882, the plaintiff obtained and received information which he claimed satisfied him that the defendants had defrauded him and that the account, as kept by the defendants, was irregular and fraudulent towards him. On the second of March the plaintiff claimed, by reason of the irregular and fraudulent transactions and accounts of the defendants, to be entitled to receive the sum of $1,000,000. The defendants denied the charges and denied that the plaintiff was entitled to receive anything. Thereupon an agreement was made, by way of compromise

between the plaintiff and the defendants, by which the plaintiff agreed to accept from the defendants a lump sum of $750,000, in full and complete settlement of all claims against the firm, and thereupon the defendants paid to the plaintiff the sum of $750,000 and the plaintiff executed and delivered a general release to the defendants. The plaintiff subsequently, claiming to have discovered other errors in said accounts than those which he had discovered at the time above-mentioned, brought this action for an accounting against the defendants, and that the said release be limited and confined to the specific matters known to the plaintiff at the time at which the release was given. The complaint contains no offer whatever to return the $750,000 received at the time of the execution of the release, and the evidence upon the trial shows that the plaintiff was incapable of making such return, and did not even offer to do so upon the trial.

Upon this state of facts the court dismissed the complaint, and from the judgment thereupon entered this appeal is taken. It is conceded, upon the part of the plaintiff, that if an action at law had been brought against the defendants, it would have been necessary for the plaintiff prior to the beginning of the action to have offered to return the $750,000. (*Gould* v. *Cayuga Nat. Bank*, 99 N. Y., 337.) It is claimed that an action at law proceeds upon the theory that there has been a rescission but that a suit in equity does not, but upon a diametrically opposite theory that there has been no rescisson and asks the court, by its judgment, to rescind. It is a suit seeking a rescission, and, so far as restoring the party to his original position is concerned and placing him *in statu quo*, the rule in equity is satisfied if the judgment will accomplish that result.

We think that the appellant is mistaken in reference to the rule in equity. The distinction between the rule in equity and the rule at law seems to be that in equity it is not necessary to tender restitution before action brought, but in the complaint restitution must be offered, and if it appears that the plaintiff is incapable of making restitution, then the action for a rescission will not lie.

In the case of *Gould* v. *Cayuga National Bank*, above cited, it is distinctly held that a party cannot be permitted, under any circumstances, to keep the fruits gained by a settlement and litigate the question whether he is to be bound by it or not In other words,

the plaintiff will not be allowed, even in equity, to assume the position that if beaten he will keep what he has got, and if successful he will get what he can.

The case of *Allerton* v. *Allerton* (50 N. Y., 670) gives no countenance to the rule sought to be established. In that case it was simply held that restitution should not be required because it appeared that, under any circumstances, the money which had been received belonged to the plaintiff, rescission or no rescission. The cases on the subject of rescission and the circumstances under which restitution is necessary before the granting of equitable relief are stated in *Metropolitan Elevated Railway Company* v. *Manhattan Elevated Railway Company* (11 Daly, 373). In that case restitution was not held to be a condition precedent to rescission, because it appeared upon the face of the papers that, under any circumstances, the plaintiff was entitled to the money which it had received, whether the contract sought to be rescinded was in existence or not.

In the case at bar the frauds alleged by the plaintiff against the defendants, were denied. These $750,000 were received in settlement of a disputed claim, and if the plaintiff desired to open that settlement the defendants had the right to contest the items included therein, and to be placed in a position to have an effective judgment in case they should succeed. They were not bound to go into the discussion of this question with the certainty that if they succeeded the plaintiff would be no worse off because he already had that which had been paid in the settlement and which he was in no condition to return.

The principle, which is the cardinal principle governing all applications to a court of equity. that a party seeking equity must do equity, applies to a case like the one at bar. It would be the height of injustice to allow this plaintiff to litigate this question with no chance in case he should fail of losing anything that he had gained by the settlement.

It is only in those cases where restitution is offered, and it appears that restitution can be made that a court of equity will wait until final judgment to determine whether restitution should be made or not. Where it appears at the commencement that restitution cannot be made that ends the right of the plaintiff to have his action for rescission considered by a court of equity.

It is clear that the plaintiff was not in a condition, upon the proof offered by him, to claim that the release should be restricted to the items to which he says it was intended to refer. The evidence shows beyond question that he intended to give a general release, that was what was demanded, and that was what he agreed to give, and it was for that he received the $750,000.

That he did not know at that time of other frauds does not affect this proposition. An instrument cannot be restricted because a party subsequently finds he ought to have been more careful in giving it. It may be set aside because of fraud. It cannot be restricted because of fraud where a party knows the nature of the instrument which he has executed.

In the case at bar the plaintiff, having executed a release with full knowledge that it was a general release in settlement of differences between himself and the defendants, claims subsequently to have discovered other frauds of which he was not aware when he executed the general release. He comes into a court of equity and claims to have this release shorn of its definite character, because he had not in mind the releasing of anything else but that of which he then knew. In other words, he is endeavoring to give for his $750,000 an entirely different instrument from that which he knew he agreed to give the defendants for that sum.

There was no case of mutual mistake. There was no misunderstanding in regard to the terms; that is, the plaintiff knew perfectly well the character of the instrument he was signing, and, under such circumstances, the instrument cannot be reformed, for that is substantially the relief which the plaintiff asks for upon this branch of the case.

Upon the whole case, therefore, we do not see how it is possible, upon the conceded facts, for the plaintiff to maintain his action, and the judgment appealed from should be affirmed, with costs.

Brady and Daniels, JJ., concurred.

Judgment affirmed, with costs.