## THE CAYUGA.

### LEHIGH VAL. TRANSP. CO. v. MILLER et al.

(Circuit Court of Appeals, Sixth Circuit. December 4, 1893.)

No. 99.

1. PAROL EVIDENCE—RECEIPTS—RELEASE AND DISCHARGE.

A writing which, besides being a receipt, contains stipulations of release and discharge from all claims growing out of a collision except one, cannot be disputed or controlled by parol evidence. Association v. Wickham, 12 Sup. Ct. 84, 141 U. S. 564, distinguished.

2. RELEASE AND DISCHARGE—CONSIDERATION—VALIDITY.

Where one consents to pay in full a bill the correctness of which he in good faith disputes, only on condition that certain other demands against him shall be released, such payment constitutes a good consideration for the release.

3. COLLISION—DAMAGES—LOSS OF USE—TOWAGE.

Where a barge in tow of a consort belonging to the same owners, which can tow her with little extra expense, is injured by the fault of a strange vessel, so as to lose her trip, the value of her use as an item of damages should not be diminished according to the arbitrary rule which allows one-third of the gross earnings for towage, but only by the actual expense the towage would have caused.

4. ADMIRALTY—APPEALS—COMMISSIONER'S REPORT—EXCEPTIONS.

Alleged errors in a commissioner's report will not be considered unless they were clearly excepted to, so as to bring them to the notice of the court below.

5. SAME—REVERSAL OF ERRONEOUS FINDING.

A finding of a commissioner on a question of fact will be reversed when clearly erroneous.

Appeal from the District Court of the United States for the Eastern District of Michigan.

In Admiralty. Libel by John A. Miller and others against the steamer Cayuga (the Lehigh Valley Transportation Company, claimants) for collision. Decree for libelants. Claimants appeal. Modified and affirmed.

Statement by SEVERENS, District Judge:

On the 28th day of April, 1890, the propeller D. M. Wilson, with her consort, the barge Manitowoc, both being then owned and employed by the libelants, was proceeding on a voyage from Kelly's island to Duluth under charter for a cargo of wheat to be carried from the latter place to Kingston, and when they were in the vicinity of Port Huron the Manitowoc was run into by the steamer Cayuga, a vessel belonging to the Lehigh Valley Transportation Company, the above-named appellants, and was seriously damaged. In consequence of her injuries, the Manitowoc was obliged to go into dock at Detroit for repairs, where she was detained for that purpose for the period of 18 days, and then returned to Lorain, her ultimate destination. The result was that she lost her trip. The Wilson, after getting her consort into port, proceeded to Duluth, took on a cargo, which she carried to Kingston, and then came back to Lorain, where she joined the Manitowoc, it being according to the original purpose that the two vessels should come to that port after discharging their cargo of wheat at Kingston. The arrival of the Manitowoc at Lorain was on the 18th day of May. The arrival of the Wilson at Kingston was on the 14th. The crew of the former vessel quit on her return to Detroit disabled.

The liability of the Cayuga for the consequences of the collision seems not to have been much disputed. At all events, the parties set about a settlement of the damages upon the assumption of such liability. A large item in the bill presented by the libelants to the manager of the Cayuga was that

of $2,380.20 for repairs upon the Manitowoc at Detroit. Another was for the loss of her earnings during the time she was delayed. There were other items of damage claimed, the particulars of which will be mentioned further on. The manager of the Cayuga, soon after the collision, agreed to pay for the repairs, and sent the dock superintendent to look after them. When they were completed, the bill was made out and sent to the libelants, by whom it was paid. The claimants contend that, on this bill being presented to the manager of the Cayuga, with the other items above mentioned, he disputed its correctness, and contended that it was too large, and covered repairs not made necessary by the collision, but agreed to pay the bill as rendered if that would be treated as a settlement of all claims arising from the collision, except for the loss of the use of the vessel during the time she was unfitted for service.

The libelants contend that there was no real question of the correctness of the bill, or of the claimants' liability to pay it. It was, in fact, paid, and the following receipt and release was drawn up, signed, acknowledged, and delivered to the claimants:

"For and in consideration of the sum of $2,080.20 to us in hand paid by the Lehigh Valley Transportation Company by the hand of W. P. Henry, general manager of said company, for and on account of the steamer Cayuga, and her master and owners, being for repairs on the barge Manitowoc by reason of the collision with the said steamer Cayuga in the Detroit or St. Clair river during the month of April, 1890, the receipt whereof is hereby acknowledged and confessed, we, the owners of the barge Manitowoc, hereby release and forever discharge the said steamer Cayuga, her master and owners, and the Lehigh Valley Transportation Company, of and from all claims, actions, demands, or causes of action of whatsoever name, kind, or nature, by reason of injuries sustained by said barge Manitowoc by reason of a collision in Detroit or St. Clair river between the said barge Manitowoc and the said steamer Cayuga, this being in full settlement of all claims made by us for injuries to said barge Manitowoc; but it is understood that the claim made by the owners of the barge Manitowoc for the loss of the use of the said barge Manitowoc is left open.

"In witness whereof we have hereunto set our hands and seals this 21st day of June, 1890.

[Signed]

"John A. Miller, Managing Owner Barge Manitowoc. [L. S.]"

Attached to this was a certificate of acknowledgment signed by a notary public at Buffalo.

The parties failing to agree upon the other grounds of liability, Miller and his associates filed their libel in the court below to recover the unpaid damages. The claimants answered, denying fault on the part of the Cayuga, an also insisting upon the settlement and receipt of all claims except for the use of the Manitowoc during the time she was disabled, which settlement they alleged was made to buy peace and save litigation. Proofs were taken, and a decree was passed in favor of the libelants, finding that the collision was occasioned wholly by the Cayuga's fault, and a reference was ordered to a commissioner to take proofs upon and report the damages. The items of damage found and reported by the commissioner were as follows:

(a) Loss of profits which would have accrued to libelants under their charter, the sum of thirteen hundred and eight dollars and forty-eight cents...........................................$1,308 48

(b) Damages to Manitowoc and expenses in consequence of collision, three hundred and eighty-one dollars................. 381 00

(c) Demurrage, three hundred and sixty-two dollars and fifty cents ..................................................... 362 50

Making the total amount of..............................$2,051 98

Upon this, interest is computed from May 20, 1890, the date of completion of repairs, to date of this report, at six per cent., one year, ten months, and two days.......................... 229 11

$2,281 09

It is conceded that there was a clerical error in the first item, and that $12.26 should be deducted, thus leaving the whole sum to be diminished by that sum, with interest. The claimants gave the receipt above mentioned in evidence before the commissioner, and testimony was offered on both sides concerning the circumstances attending its execution. The commissioner simply reported the evidence, with a copy of the instrument, and submitted to the court the question of the proper disposition of that part of the case. The claimants filed exceptions upon matters hereafter referred to in the opinion. The court, upon correcting the small error above mentioned, confirmed the report, and rendered a final decree for $2,338.86, and the claimants bring the case here on appeal upon the question of damages only.

Moores & Goff, for appellants.

H. C. Wisner, for appellees.

Before BROWN, Circuit Justice, TAFT, Circuit Judge, and SEVERENS, District Judge.

SEVERENS, District Judge, (after stating the facts.) 1. The commissioner omitted to find any conclusion of law or fact involved in the proof before him, in regard to the effect of the instrument in writing executed in behalf of the libelants on June 21, 1890, conceiving the proper course to be to report the proof, and leave the determination thereon to be made by the court; and, while there is no express adjudication by the court in regard to the construction and effect which ought to be given to it, it is manifest from the decree that the court must have held that the only effect which could properly be given to that instrument was to conclude the libelants with respect to the cost of repairs incurred by the Manitowoc in consequence of the collision.

In this we think the court erred. It is, no doubt, well-settled law that so much of such an instrument as is in the nature of an acknowledgment of receipt, being the mere statement of a fact, and not containing terms of agreement, may, as a general rule, be explained and contradicted by parol evidence. 1 Greenl. Ev. § 305; 2 Whart. Ev. § 1064; Weed v. Snow, 3 McLean, 265. But this instrument contained more than a mere receipt. It stated that, in consideration thereof, the owners of the Manitowoc released and forever discharged the Cayuga and her owners from all claims whatsoever on account of the injury resulting from the collision, except the claim made by the owners for the loss of the use of the barge Manitowoc. It was a release, under seal, of all claims resulting from the collision except the one saved, namely, that for the value of the use of the vessel during the time she was disabled. This agreement for release was in the nature of a contract, and could no more be disputed or controlled by parol evidence than any other instrument in writing witnessing an agreement of parties. 2 Whart. Ev. § 1063; Wood v. Young, 5 Wend. 620; Stearns v. Tappin, 5 Duer, 294; Pratt v. Castle, 91 Mich. 484, 52 N. W. 52; Cummings v. Baars, 36 Minn. 353, 31 N. W. 449; Sherburne v. Goodwin, 44 N. H. 276.

A release is held to include all demands embraced by its terms, whether particularly contemplated or not; and direct parol evidence

that a certain claim was not in the minds of the parties is not admissible. Deland v. Manufacturing Co., 7 Pick. 244; Hyde v. Baldwin, 17 Pick. 303; Sherburne v. Goodwin, 44 N. H. 271. The surrounding facts and circumstances may, as in other cases, be shown in order to apply the language of the instrument to its proper subject-matter, and prevent its application to a matter not involved in the transaction. Littledale, J., in Simons v. Johnson, 3 Barn. & Adol. 175; 1 Greenl. Ev. §§ 286, 288.

In the present case the claims were all germane to the transaction; and being so, and being also included in the very terms of the instrument, they cannot be excluded by proof of contemporaneous parol declarations, much less by general evidence of what either party understood. We have not overlooked the case of Association v. Wickham, 141 U. S. 564, 12 Sup. Ct. 84, where the effect of a receipt and release somewhat similar to the instrument in the present case was considered. But there the release was construed to have reference to the provisions in the policy for terminating it at any time, and the policy had not yet expired. Besides, it was held that there was no consideration for the release, if that were construed as a surrender of the claim upon which that suit was brought. No doubt, if there were any mistake in the agreement, it might be reformed upon proper proceedings for that purpose; but, so far as appears, no complaint that this instrument was not what was intended was ever made or suggested until its effect was brought into controversy in the present case.

But it is urged that there was no consideration for the release of the now disputed claims; and it may be that this was the ground on which the court below proceeded. We are satisfied, from the evidence of both the parties, that the item presented in the bills by the libelants, and on which payment was demanded, for the cost of repairs upon the Manitowoc, was disputed, not on the ground that the claimants were not liable at all, but because it was excessive; and the evidence fails to show that there was any bad faith in taking that position. It was denied that it was reasonable, and payment was for some time withheld, until finally the parties got together, and made an agreement upon the whole subject. An attorney was employed, and the writing in question was prepared and executed after much attention to its terms. The evidence is quite convincing that the manager of the Cayuga would not have paid the amount of the item demanded as the cost of repairs but for the stipulation that it should be received in final satisfaction for all claims growing out of the collision except the one left open. The employment of a lawyer, the prolonged discussion of the subject, and, above all, the express exclusion of one claim, lend strong corroboration to the testimony in proof that the payment of the money and the taking of the release were the result of concession and a compromise. And this would be a sufficient consideration for the release of other claims than the cost of repairs. 1 Pars. Cont. 363, 364; U. S. v. Child, 12 Wall. 232; Boffinger v. Tuyes, 120 U. S. 198, 7 Sup. Ct. 529. If the transaction were what the libelants now contend it was, the natural course would have been to have simply

given a receipt for the payment of that item of their claims. It follows that the items making up the claim for damages on account of injuries to the Manitowoc, and which are aggregated in the commissioner's report at $381, should have been disallowed.

2. The matter left open is to ascertain what was the value of the loss of the use of the vessel. We think this must be determined, from a consideration of the circumstances, to mean the loss which the owners of the injured vessel actually sustained. The vessel was being towed by the Wilson, which they owned. The Wilson was competent to have taken the Manitowoc through the trip with small additional expense and loss of time. We cannot see any just reason why there should be deducted, for towage, one-third of the gross earnings of the barge in estimating the value of her lost time, because, as appears, there is, by usage, such an allowance when the service of towage is rendered by a stranger. The rule itself is an arbitrary one, and is not shown to be universally followed. The detention of the Wilson by the towing of the Manitowoc, if she had gone along, was taken into account by the commissioner, and the claimants got the benefit of the allowance.

The actual loss of the use of the barge to the owners was the value to them of the gross earnings she would have made from her voyage if it had not been interrupted, less the expense which they would have incurred in the accomplishment of it; and, as the means existed for a definite estimate, we think there was no error in not resorting to a mere arbitrary standard, and the assignment of error thereon is not sustained.

3. One of the exceptions to the commissioner's report was that he refused to allow a deduction of $89 from the gross earnings of the interrupted voyage for the cost of the board and wages of the four seamen while the barge was being repaired at Detroit. The commissioner allowed $227.52 for the board and wages of the officers and crew for the period of 18 days, which he found was the length of time the round trip to Kingston would have taken, and this was adopted by the court. It is now alleged as error that the court did not allow $263.77 for the wages and board of officers and crew, —that is to say, for three days more than were actually allowed. The argument in the brief is that, inasmuch as the seamen quit when the barge arrived at Detroit, the expense of their board and wages for 18 days at $5.80 per day—in all, $104.40—was saved to the libellants, and therefore that sum should be deducted. From what it should be deducted in the interest of the claimants is not stated, and does not readily appear; but it is a sufficient answer to say that the assignment of error does not follow the exception taken to the report. The party complaining was bound with reasonable distinctness to allege his exception, and bring it to the attention of the court. Failing in that, he cannot assign for error other kindred matter which might have been proper subject of exception.

Similar observations apply to the claim made in the argument that $60.36 should have been added to the deductions from gross earnings on account of the towage charges back through the Welland

canal, which would have been incurred. The only exception made to the report in this respect was that it did not allow for full expenses for towing through the Welland canal in transporting the cargo. The only assignment of error that can be supposed to have any relation to this subject is a general one that the court erred in holding that the net earnings of the barge on the trip would have been the sum of $1,296.22. It is questionable whether this assignment is sufficiently specific to raise the point now urged. But, if that objection were waived, it remains that there was no exception to the report which challenged the attention of the court, and demanded its judgment upon the question.

4. A further inquiry which is properly presented is whether the commissioner was right in holding that the libelants were entitled to recover the sum of $562.50 for four days' "demurrage" (as it is called) to the Manitowoc over and above the time required by her to make the interrupted trip. Libelants, in their brief, admit that this was a mistake of two days which should be corrected in favor of the claimants, and upon the argument it was further admitted that another day should be deducted.

We should not feel justified in disturbing the finding of the commissioner upon a question of fact not free from doubt. By the forty-fourth Rule of the General Rules in Admiralty, the like powers are conferred upon commissioners acting on references as are usually exercised by masters in chancery in the equity courts. There are the same reasons for giving to their conclusions the same force and effect. The rule in regard to the report of the master was stated by the supreme court in Tilghman v. Proctor, 125 U. S. 136, 8 Sup. Ct. 894, to be that his conclusions would not be disturbed unless it should be apparent that there was clear mistake in the process by which the conclusions were reached. And see Callaghan v. Myers, 128 U. S. 617, 9 Sup. Ct. 177; Kimberly v. Arms, 129 U. S. 512, 9 Sup. Ct. 355. But we think it clear that the commissioner fell into an error on this subject, and that nothing should have been allowed. It was shown, without contradiction, that the Manitowoc arrived at Lorain on the 18th day of May, and that the Wilson reached Kingston on the 14th. The evidence showed, and the commissioner found, that the latter vessel would not have arrived at Kingston until two and one-half days later than she did if she had taken the barge along on the whole trip. This would leave only one day and a half to unload at Kingston and get back to Lorain, which, upon the evidence, would have been an impossibility. This disposes of all the errors assigned. We conclude that the net earnings should stand as fixed by the commissioner, less the sum of $12.26 for error, which was corrected by the court below, leaving, after correction, $1,296.22.

The other claims of the libelants are disallowed. Interest at 6 per cent. is allowed on the above sum from May 20, 1890, to the date of the decree to be entered on the mandate. The cause will be remanded to the district court, with directions to modify its former decree in conformity with this opinion. The libelants will recover costs in the court below, and the appellants will recover costs here.