## BUTTERFIELD v. REYNOLDS.

1. RELEASE—CONTRACT — CONSTRUCTION — EVIDENCE — PAROL EVIDENCE.

A release is to be construed from the standpoint of the parties at the time they executed it; extrinsic evidence is admissible to explain the circumstances under which it was entered into and the nature of the transaction to which it was designed to apply without adding to or subtracting anything from the words used. It embraces all demands to which its provisions apply, whether contemplated or not, and direct parol evidence that a certain claim was not in-

cluded or contemplated in the preliminary negotiations is inadmissible.

2. SAME—CONTRIBUTION—EVIDENCE—NOTES—DEFENSES.

Plaintiff and defendant indorsed jointly with others the notes of a manufacturing corporation that subsequently became insolvent. In consideration that plaintiff would continue to act as indorser certain securities were deposited with him to cover his indorsement and protect him from liability, and at the same time, he executed to defendant a release in general terms "from all actions, causes of action, suits, controversies, claims and demands, whatsoever, for or by reason of any matter, cause, or thing from the beginning of the world down to the 6th day of April," etc. No other contractual obligations subsisted between them. Two months later, in order to renew one of the notes, defendant indorsed new paper, on which plaintiff sued for contribution. *Held*, that defendant was not liable; that the new note had been given for the indebtedness existing when they executed the release, and no new debt was created, that the release barred any liability upon the previous indebtedness, or a renewal thereof.

Error to Muskegon; Sullivan, J. Submitted October 13, 1915. (Docket No. 72.) Decided December 21, 1915.

Assumpsit by William W. Butterfield against Walter J. Reynolds for contribution on a note. Judgment for plaintiff. Defendant brings error. Reversed.

*Cross, Vanderwerp, Foote & Ross* (*Foreman, Levin & Robertson*, of counsel), for appellant.

*William Carpenter*, for appellee.

STONE, J. This is an action of assumpsit wherein the plaintiff seeks contribution from the defendant as a cosurety upon a certain promissory note hereinafter described. The issue was tried before the court without a jury, and the following findings of fact and conclusions of law were filed:

"I. On the 6th day of June, 1911, the following note was executed, indorsed, and delivered to the Hackley National Bank of Muskegon, Mich., viz.:

"'MUSKEGON, MICH., June 6, 1911.

"'On or before one month after date we promise to pay to the order of Hackley National Bank five thousand and no/100 dollars, at the Hackley National Bank. Value received, with interest at six per cent. per annum. Protest waived. $5,000.00 and int. Due July 6. No. 24986.

"'RACINE BOAT MANUFACTURING CO.,
"'By W. J. REYNOLDS, Pres.'

"On the back of which was indorsed the following:

"'The undersigned indorsers hereby expressly waive demand of payment, notice of nonpayment, protest, and notice of protest of the within note.

"'W. J. REYNOLDS,
"'PAUL B. McCRACKEN,
"'WM. W. BUTTERFIELD,
"'NATIONAL BOAT AND ENGINE CO.,
"'Per G. W. THOMPSON, Asst. Treas.'

"II. Prior to April 6, 1911, the Racine Boat Manufacturing Company, a corporation, had sold and conveyed all its property to the National Boat & Engine Company, a corporation, which had assumed all its indebtedness, included among which was one to the Hackley National Bank for the sum of $5,000, evidenced by a promissory note indorsed by Walter J. Reynolds, Paul B. McCracken, and William W. Butterfield. When that note became due, it was renewed in form by the Racine Boat Manufacturing Company because the bank declined to take the note of the National Boat & Engine Company and release the Racine Boat Manufacturing Company, but the National Boat & Engine Company added its indorsements to that of the other three persons in order to make itself liable thereon. The note mentioned in paragraph one is a renewal of that note.

"III. In September, 1911, the National Boat & Engine Company was adjudicated a bankrupt in the District Court of the United States for the District of Maine. The Racine Boat Manufacturing Company, in

form the maker of said note, is insolvent.  Paul B. Mc-Cracken, one of the indorsers thereon, is insolvent, and is not a resident or within the jurisdiction of this State.

"IV. The Hackley National Bank having made demand upon the plaintiff for the payment of said note, on the 3d day of January, 1913, he made a compromise with the bank and paid to the bank in extinguishment of its claim on the note the sum of $4,212.50, and on the 17th day of October, 1914, made due demand on the defendant for the payment to him of one-half of said amount, which was refused by the defendant.

"V. On the 6th day of April, 1911, the National Boat & Engine Company, the Racine Boat Manufacturing Company, and the plaintiff entered into the following agreement:

" 'Whereas, there have differences existed between the National Boat & Engine Company, a corporation organized under the laws of the State of Maine, the Racine Boat Manufacturing Company, a corporation organized under the laws of the State of Michigan, and William W. Butterfield, of Muskegon, Mich., and all of those differences having been settled and adjusted with the exception of the contingent liability of the said Butterfield as an indorser on the outstanding notes of the said corporation; and

" 'Whereas, the said Butterfield has agreed to continue his indorsements on said outstanding notes until the said corporations are able to pay and retire the same;

" 'It is mutually agreed by and between the corporations aforesaid and the said Butterfield that he shall be protected and secured by the deposit in escrow with the firm of Cross, Vanderwerp, Foote & Ross, of Muskegon, Mich., of a sufficient number of first mortgage gold bonds of the National Boat & Engine Company, at the ruling market value thereof, and —— per cent. more to fully and generously indemnify and protect the said Butterfield upon his said indorsements.

" 'It is further understood and agreed that this paper writing is but the memorandum of a contract, which is to be reduced to legal form and phraseology at Muskegon, Mich., with all convenient speed and dispatch to carry out the purposes and intentions of the parties, as embraced in a settlement and adjustment of their differences as made this day.

" 'And it is further understood and agreed that the personal note of the said Butterfield for one thousand dollars ($1,000), secured by a one thousand dollar bond owned by the said Butter-

field, is the note and obligation of one or both of the said corporations, and not the personal indebtedness of the said Butterfield, and that, should a demand be made for the payment of said note, the said corporations, one or both of them, shall cause the same to be paid, and return the said bond to the said Butterfield.

" 'In witness whereof the said corporations have on this 6th day of April, A. D. 1911, caused to be executed in triplicate this memorandum to be signed by their presidents and the seal of said corporations to be affixed by their secretaries; and the said William W. Butterfield has signed the same with his hand and seal.

" 'National Boat and Engine Company,

" 'By W. J. Reynolds, Its President.    [Seal.]

" 'Attest:

" 'C. A. Williams, Secretary.

" 'Racine Boat and Manufacturing Company,

" 'By W. J. Reynolds, Its President.

" 'Attest:

" 'W. W. Butterfield, Secretary.'

"VI. On the same day the plaintiff executed and delivered to the defendant the following release:

" 'Know all men by these presents that I, William W. Butterfield, of the city of Muskegon and State of Michigan, for and in consideration of the sum of one dollar to me in hand paid by Walter J. Reynolds, of the city of Muskegon, State of Michigan, do hereby release and forever discharge the said Walter J. Reynolds, his heirs, executors, and administrators, of and from all actions, causes of action, suits, controversies, claims, and demands whatsoever for or by reason of any matter, cause, or thing from the beginning of the world down to the 6th day of April, A. D. 1911.                                    W. W. Butterfield.

" 'In presence of C. A. Williams.'

"At the time of the execution and delivery of said release there had been and were no contractual relations between plaintiff and defendant other than the contingent liability of each to the other as coindorsers upon notes of the Racine Boat Manufacturing Company."

The finding also sets forth a supplemental agreement made and entered into on June 20, 1911, between the National Boat & Engine Company, the Racine Boat Manufacturing Company, and the plaintiff, reciting

that whereas, the National Boat & Engine Company was the successor to and had taken over the property of the Racine Boat Manufacturing Company, and had assumed the indebtedness of said Racine Boat Manufacturing Company, and whereas, a part of the indebtedness of said Racine Boat Manufacturing Company was represented by promissory notes given by said Racine Boat Manufacturing Company, and indorsed by said William W. Butterfield, and whereas, for the purpose of protecting said William W. Butterfield, said Racine Boat Manufacturing Company executed and delivered to him a certain deed of trust covering its property, to protect him against liability on said indorsements, and whereas, it was necessary that a portion of said promissory notes should be renewed by said National Boat & Engine Company, and whereas, said William W. Butterfield was the secretary of said Racine Boat Manufacturing Company, and was an employee of said National Boat & Engine Company, and whereas, there were certain items of indebtedness existing between said William W. Butterfield and said National Boat & Engine Company and said Racine Boat Manufacturing Company, it was among other things agreed as follows:

"Now, therefore, it is hereby agreed that all of the matters in difference, and all claims of any kind or character growing out of the relationship existing between the parties hereto, or any of them, or between said William W. Butterfield and Walter J. Reynolds and Paul B. McCracken, two of the stockholders and officers of said Racine Boat Manufacturing Company, and of said National Boat & Engine Company, are fully settled, paid, and discharged"—

a part of the consideration for said settlement being:

"*First.* That said William W. Butterfield shall surrender to the National Boat & Engine Company the deed of trust dated January 8, 1909, given to him by the Racine Boat Manufacturing Company for the pur-

pose of securing him from liability of any kind incurred by his indorsement on the promissory notes of said Racine Boat Manufacturing Company.

"*Second.* That said William W. Butterfield shall continue his indorsements on outstanding notes until said corporation or corporations are able to pay and retire the same; it being understood and agreed that said notes are to be paid and retired in the same relative proportion as other similar indebtedness of the National Boat & Engine Company.

"*Third.* That he shall be protected and secured in the making of said indorsements by the deposit in escrow with the firm of Cross, Vanderwerp, Foote & Ross, of Muskegon, Mich., of an amount of first mortgage gold bonds of the National Boat & Engine Company of the par value of double the amount of the total of the notes indorsed by said William W. Butterfield, which at this time are as follows: [Here follows a list of notes, including the note here sued upon, aggregating $44,000.]"

The findings of fact concluded as follows:

"VIII. That in order to secure the payment of the note, and of other indebtedness owing by the National Boat & Engine Company to the Hackley National Bank in January, 1911, the National Boat & Engine Company delivered to the bank as collateral security first mortgage bonds of the par value of ten thousand dollars ($10,000); that in the month of May, 1911, in order to indemnify the plaintiff against any loss by reason of his indorsement of said note, and of other notes indorsed by him for which the National Boat & Engine Company was liable, the National Boat & Engine Company delivered to Cross, Vanderwerp, Foote & Ross, as trustees, to be held in escrow for the benefit of the plaintiff $88,000 par value of the first mortgage bonds of the said corporation.

"IX. That the Hackley National Bank duly filed its claim for said note, and the bonds securing the indebtedness to it with the referee in bankruptcy for the District Court of the District of Maine, and on payment being made to it, as set forth in paragraph 4, it assigned said claim to the plaintiff; that the plaintiff also filed a claim with the said referee based on the $88,000

of bonds above mentioned; that the claim of the Hackley National Bank on the note was duly allowed, subject to the surrender by plaintiff of certain preferences claimed by the trustee, and determined by the referee, to have been received by him, but that the claim on all the bonds was disallowed by the referee; that his decision was reviewed in the District Court for the District of Maine, and the bonds delivered to the Hackley National Bank were allowed, subject to said preferences, but that the bonds delivered to Cross, Vanderwerp, Foote & Ross, as trustees, were disallowed, and that an appeal has been taken by the plaintiff to the Circuit Court of Appeals for the First Circuit of the United States, and is now pending and undecided; that the plaintiff has received nothing on account of said claims."

The following conclusion of law was found by the trial court:

"I find that the plaintiff is entitled to recover from the defendant one-half of the amount paid by him as aforesaid, to wit, the sum of $2,106.25, with interest thereon at the rate of 5 per cent. per annum from January 3, 1913, to the date of judgment, and that judgment be entered accordingly."

The defendant proposed the following amendment thereof, which was refused:

"I find as a conclusion of law that any right of action which plaintiff might otherwise have against defendant for contribution, by reason of his payment of the said note, is barred by the release of April 6, 1911, and the release contained in the contract of June 20, 1911, hereinbefore mentioned, and that judgment of no cause of action be entered accordingly."

Exceptions were duly taken to the conclusion of law and to the refusal of the court to amend the conclusion as proposed.

From a judgment for plaintiff entered pursuant to said finding, the defendant has brought error. By appropriate assignments of error the defendant claims:

(1) That the court erred in finding as it did in its conclusion of law, in refusing to find as proposed, and in entering judgment for plaintiff.

(2) That the judgment entered is not supported by the evidence, or by the law of the case.

(3) That the judgment entered is erroneous because plaintiff's supposed cause of action is barred by the release of April 6, 1911, and by the release contained in the contract of June 20, 1911.

(4) That the judgment is erroneous for the reason that, if plaintiff is entitled to recover at all, he can recover only one-fourth of the amount paid by him, with interest thereon, and not one-half of such amount as found by the court.

The first three assignments of error will be considered together. It is the claim of appellant that there is no liability of defendant for contribution on account of plaintiff having paid the note of June 6, 1911, because defendant was released from such liability by the general release executed and delivered by plaintiff to him on April 6, 1911; that said release was a general release and comprehensive in its terms, and the circumstances under which it was executed, and the purpose and intention of the parties, showed that it was intended to absolve defendant from all liability for contribution on account of his being a cosurety with the plaintiff on any and all indebtedness of the Racine Boat Manufacturing Company or the National Boat & Engine Company prior to April 6, 1911; that the note of June 6, 1911, which is the basis of this suit, is not a new indebtedness, but is a continuation of an indebtedness existing prior to April 6, 1911, and was therefore covered by the release executed and delivered by the plaintiff to defendant. We are impressed with this claim of the defendant. The closing words of the sixth finding of fact are significant:

"At the time of the execution and delivery of said release there had been and were no contractual relations between plaintiff and defendant other than the

contingent liability of each to the other as coindorsers upon notes of the Racine Boat Manufacturing Company."

It will be noted that the release given was of the most general kind, and very broad in its terms. Taken in the light of the circumstances under which this release was drawn and the purpose for which it was executed and delivered, we think that it was intended, not alone to release defendant from liability arising from his being a cosurety with plaintiff on any particular note or notes then existing, but that it was also intended to release defendant from all liability arising out of his being a cosurety on any indebtedness, as distinguished from evidence of indebtedness, existing at the time. The plaintiff testified that he did not consider either the defendant or McCracken as being financially responsible, and that he alone would probably be the one to whom the holders would ultimately look for the payment of this indebtedness, if it were not paid by the company; and he further testified that it was for the purpose of protecting himself against such contingent liability that he demanded security in the form of $88,000 of bonds of the National Boat & Engine Company, which he at the time considered ample security for all the indebtedness for which he was a surety. Having taken the security, it was only reasonable that he should release his cosureties. The claim of the plaintiff is not that the release was without consideration, or that it was obtained by fraud, but that:

"The release purports to discharge the appellant from all actions, causes of action, suits, controversies, claims, and demands whatsoever to the sixth day of April, A. D. 1911. It is apparent, therefore, on the face of the papers, that the note executed two months after the 6th day of April could give rise to no action, suit, controversy, or demand whatsoever that was contemplated by the release. The intention of the parties

189 Mich.—11.

as disclosed by the written instruments, the release, and the subsequent note is clear, and cannot be misunderstood. The release does not contemplate a discharge of the obligation of the appellant arising from the indorsement of the note. A release does not apply to any transaction in the future, unless it so specifies. *Whipple* v. *Parker*, 29 Mich. 369; *Mouat* v. *Hildebrand*, 15 Colo. 382 (24 Pac. 1042)."

In *Whipple* v. *Parker* it was held that a settlement could not, without evidence to that effect, reasonably be supposed to include or acknowledge payment, for what the party had not yet paid, and which at the time did not constitute an item of account, but accrued afterwards.

We think that the testimony of the plaintiff takes the instant case outside of the doctrine of the cited case. We think the position of the plaintiff, above quoted, too narrow. We should look to the substance of things, and consider the position of the parties and the nature of the surroundings. In the light of the circumstances under which the release was made, we think the fact that the original loan was made prior to the date of the release is material and important. We think there can be no question that it was the intention of the plaintiff to release defendant from any and all liability arising out of his being a cosurety, not alone on the notes which were only evidences of an indebtedness, but from all liability arising out of his being a cosurety for the indebtedness of the Racine Boat Manufacturing Company existing on April 6, 1911, and of which the note in suit is only a renewal or continuation, and not at all a new indebtedness. The bank had demanded the same indorsers upon renewal. While on the surface, and in so far as the bank was concerned, the old note was canceled by the giving of the new one, for the purpose of getting at the proper construction of the release in question and as between the parties here, we should consider, as the fact really was,

that it was only one of the evidences of the indebtedness that was canceled, and not the indebtedness itself. It is a general rule of construction of releases that a release shall be construed from the standpoint which the parties occupied at the time of its execution. 24 Am. & Eng. Enc. Law (2d Ed.), p. 290.

"Where only general words are used, they will be construed most strongly against the party executing the release, and so a release is held to include all demands embraced by its terms, whether particularly contemplated or not, and direct parol evidence that a certain claim was not in the minds of the parties is not admissible." *Id.* p. 294.

See 34 Cyc. p. 1076; *Rowe* v. *Rand,* 111 Ind. 206 (12 N. E. 377) ; *Seymour & Co.* v. *Butler,* 8 Iowa, 304; *The Cayuga* (Cir. Ct. of App. 6th Cir.), 59 Fed. 483 (8 C. C. A. 188) ; *Swinburne* v. *Swinburne,* 36 R. I. 255 (90 Atl. 121).

In *Rowe* v. *Rand, supra,* the court said:

"A release ought to be construed from the standpoint which the parties occupied at the time of its execution. To enable a court to so construe a release, extrinsic evidence is admissible to explain the circumstances under which it was executed, and the nature of the transaction to which it was designed to apply, without adding to, or subtracting anything from, the words used by the parties to the instrument. 1 Greenl. Ev. § 277; *Reed* v. *Insurance Co.,* 95 U. S. 23; 7 Wait on Actions and Defenses, 464.

"The particular purpose for which a release was executed ought always to be kept in view, and, where only general words are used, they are to be construed most strongly against the party executing the release. *Seymour & Co.* v. *Butler,* 8 Iowa, 304; *Rich* v. *Lord,* 18 Pick. [Mass.] 322; *Fazakerly* v. *McKnight,* 88 Eng. C. L. 795; *Solly* v. *Forbes,* 4 Moore, 488; *Lyall* v. *Edwards,* 6 Hurl. & N. 336; *Jackson* v. *Stackhouse,* 1 Cow. [N. Y.] 122 [13 Am. Dec. 514]."

In the *Cayuga Case* Judge Severens said:

"A release is held to include all demands embraced by its terms, whether particularly contemplated or not; and direct parol evidence that a certain claim was not in the minds of the parties is not admissible. *Deland* v. *Manufacturing Co.*, 7 Pick. [Mass.] 244; *Hyde* v. *Baldwin*, 17 Pick. [Mass.] 303; *Sherburne* v. *Goodwin*, 44 N. H. 271. The surrounding facts and circumstances may, as in other cases, be shown in order to apply the language of the instrument to its proper subject-matter, and prevent its application to a matter not involved in the transaction. Littledale, J., in *Simmons* v. *Johnson*, 3 Barn. & Adol. 175; 1 Greenl. Ev. §§ 286, 288."

To the same effect are *Palmer* v. *Corbin*, 1 Root (Conn.), 271; *Duff* v. *Hutchinson*, 57 Hun, 152 (10 N. Y. Supp. 857).

That the general release given by plaintiff to defendant was such as to release the latter from the contingent liability because of their being cosureties, see 32 Cyc. p. 284; 24 Am. & Eng. Enc. Law (2d Ed.), p. 312, and cases there cited.

In *Pierce* v. *Parker*, 4 Metc. (Mass.) 80, the court said:

"From the best examination I have been able to give to the question before us, I come to this conclusion: That, while a possibility merely is not the subject of a release, yet that in all cases where there is an existing obligation or contract between parties, although such obligation or contract is executory and dependent also upon contingencies that may never happen, still, if the party, in whose favor such obligation or contract is made, or who is liable, by force of it, to suffer damages if it is not performed by the other when the contingency happens, shall execute a release of all claims and demands, actions and causes of action, etc., correct in point of form, and having at the time of executing the release such obligation or contract in view, as one of the subjects upon which the release shall operate, then such release shall be held as a good and valid bar to any suit which may be afterwards brought upon such obligation or contract, or for money had, received,

or paid, upon the future happening of the contingency, in consequence of which the plaintiff sustains damage, and but for such release would have had a perfect right of action."

In our opinion, the release of April 6, 1911, was a valid bar to this action, and we need not consider the contract of June 20, 1911, only to remark in passing that the defendant was not a party to that contract. The conclusion which we have reached renders it unnecessary to consider the last assignment of error.

The judgment of the circuit court is reversed. and a new trial granted.

BROOKE, C. J., and PERSON, KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.