BUTTERFIELD *v.* REYNOLDS.

1. RELEASE—CONSTRUCTION—RIGHT TO CONTRIBUTION.

Where a suit for contribution was brought against a co-surety on certain notes of a corporation which were indorsed by plaintiff and defendant and another as sureties, and paid by plaintiff, and plaintiff had received a trust mortgage as security for his indorsement, which mortgage was not recorded, and thereafter another corporation took over the assets and liabilities of the first corporation, and, upon a subsequent renewal of the notes, the new corporation gave to plaintiff as security for his continued indorsement thereon certain of its corporate bonds, and at the same time both corporations and plaintiff executed a written agreement in settlement of certain controversies between them in which it was declared that all claims growing out of the relationship of the parties, plaintiff and an employee of the second, or between plaintiff and defendant and their cosurety on the notes were fully settled, paid and discharged, and plaintiff gave a similar release to the other surety and received similar releases from both corporations, *held,* that such release of defendant was, with the releases and the settlement, and agreement part of one transaction and not entirely voluntary on plaintiff's part.[1]

2. SAME—CONSIDERATION.

Such release of defendant was supported by a valid consideration, notwithstanding the bonds held by plaintiff were, on insolvency of the corporation, held to be invalid as such security.

Appeal from Muskegon; Sullivan, J.     Submitted January 12, 1917.     (Docket No. 122.)     Decided May 31, 1917.

Bill by William W. Butterfield against Walter J.

[1]On right of surety who gives his personal obligation for a debt on which he was jointly liable with other to enforce indemnity or contribution from latter, see note in L. R. A. 1915A, 898.

Reynolds to enforce contribution from defendant as a coindorser with plaintiff of certain promissory notes. From a decree for defendant, plaintiff appeals. Affirmed.

*Carpenter & Jackson,* for plaintiff.

*Cross, Vanderwerp, Foote & Ross (Jacob Levin* and *Moses Levitan,* of counsel), for defendant.

Stone, J. The bill of complaint in this cause was filed to enforce contribution from the defendant as a coindorser with the plaintiff of certain promissory. notes given by the Racine Boat Manufacturing Company to various banks and individuals. The defendant claimed that he had been absolved from all liability by reason of a general release given to him by the plaintiff on April 6, 1911. The court below sustained the defendant's contention and dismissed the bill with costs, and from that decree the plaintiff has appealed to this court.

The release and the several agreements here involved were under consideration by this court in the case of *Butterfield* v. *Reynolds,* 189 Mich. 152 (155 N. W. 442), to which we refer for a general statement of the facts involved. That was a suit on the law side of the court, and the particular note involved in that case is not under consideration here, but similar notes are involved, and are under consideration. Referring to that case, counsel for plaintiff in their brief in the instant case say:

"The plaintiff does not question the construction placed on the release, as determined by this court. He does claim, however, that there was no consideration for the release, and therefore it should not be held operative."

Owing to this claimed want of consideration, it may be well to further state that the plaintiff, the defend-

ant, and Paul B. McCracken were directors of the Racine Boat Manufacturing Company, and were co-indorsers on certain notes given by the company for money borrowed for use in its business. While these notes were outstanding, the assets of the Racine Boat Manufacturing Company were purchased by the National Boat and Engine Company, a Maine corporation, and the latter assumed all of the indebtedness of the former. The notes of the former company were given in renewal of those outstanding at the time of the purchase, as they became due, and the National Boat & Engine Company indorsed the notes, together with the parties hereto and McCracken. The Racine Boat Manufacturing Company ceased doing business, and it was, and is, concededly insolvent.

Long prior to the transfer of its assets to the National Boat & Engine Company the plaintiff, the defendant, and McCracken were the principal stockholders of the Racine Boat Manufacturing Company, and had been indorsers on a very much larger amount of the corporation paper than was outstanding at the time of the transfer, and the plaintiff then was the only one of the three who had any financial resources liable to be called upon in case the indorsers had to meet the paper. The corporation, by practically unanimous vote of its stockholders and directors, authorized the execution to him of a trust mortgage to secure his indorsement. It was executed, but was not placed on record. He still had the instrument at the time the transfer was made to the National Boat & Engine Company, but at that time promise was made to him by those interested, and who were officers of the National Boat & Engine Company when organized, that he should be secured against loss by reason of his indorsements by bonds of the latter company secured by first mortgage on all its property, being a part of a large issue. Ultimately the president (this

defendant) and the secretary of that corporation placed in the hands of Cross, Vanderwerp, Foote & Ross, as such security, first mortgage bonds of the par value of $88,000, the amount of the indorsements at that time being $44,000.

At the time the bonds were delivered (in May, 1911) by the officers of the company there were no matters in controversy between the plaintiff and defendant personally. They were attempting to settle only certain unsettled claims between the plaintiff and the corporation. They made this settlement, and embodied it in a written instrument, on April 6, 1911. See *Butterfield* v. *Reynolds, supra.* That instrument contains this language:

"It is further understood and agreed that this paper writing is but a memorandum of a contract, which is to be reduced to legal form and phraseology at Muskegon, Mich., with all convenient speed and dispatch to carry out the purposes and intentions of the parties, as embraced in a settlement and adjustment of their differences as made this day."

Such further agreement was made on June 20, 1911, between both corporations and the plaintiff. After reciting the taking over of the property and indebtedness of the Racine Company by the National Company, referring to the outstanding notes, and the necessity of renewal thereof, the giving of the trust deed, the fact that the plaintiff herein was the secretary of the Racine Company and an employee of said National Company, the agreement contains the following:

"Whereas, there were certain items of indebtedness existing between said William W. Butterfield, said National Boat & Engine Company, and said Racine Boat Company:

"Now, therefore, it is hereby agreed, that all of the matters in difference and all claims of any kind or character growing out of the relationship existing between the parties hereto, or any of them, or between

said William W. Butterfield and Walter J. Reynolds and Paul B. McCracken, two of the stockholders and officers of said Racine Boat Manufacturing Company, and of said National Boat & Engine Company, are fully settled, paid, and discharged, including any claim for salary made by said William W. Butterfield, a part of the said consideration for said settlement being;"

the surrender of said trust deed to the National Company, the continuation of his indorsements on the outstanding notes until said corporation or corporations were able to pay the same, that he should be protected by the deposit of bonds, etc., and concluding as follows:

"That the personal note of said William W. Butterfield for the sum of one thousand ($1,000) dollars, given to the National Lumbermen's Bank, is acknowledged to be the note of said National Boat & Engine Company, to be paid by it, and the one thousand ($1,000) dollar bond deposited by said Butterfield to secure said note, to be returned to him within twenty days from this date, it being understood and agreed that should his indorsement be required in taking up this demand note, and in releasing said bond of one thousand ($1,000) dollars, that he shall be secured on his said indorsement as provided in paragraph 3."

This agreement was signed:

"National Boat & Engine Company, by W. J. Reynolds, President; Racine Boat Manufacturing Company, by W. J. Reynolds, President; and by W. W. Butterfield."

In September, 1911, the National Boat & Engine Company was duly adjudged a bankrupt by the United States district court for the district of Maine. The holders of the notes involved then made demand on the plaintiff for payment of the same. He paid the notes and took assignments thereof. Within the statutory time Cross, Vanderwerp, Foote & Ross and the plaintiff filed proof of claim before the referee in

bankruptcy on the bonds for the amount of the indorsements. The claim of the $88,000 of bonds was duly heard before the referee, who disallowed the same. The plaintiff appealed to the district court, where the action of the referee was sustained, 216 Fed. 208, and he then appealed to the circuit court of appeals of the United States for the first circuit, and that court also disallowed the claim, using the following language in its opinion, 223 Fed. 956, 960 (139 C. C. A. 436, 440) :

"At the time the bonds were delivered Butterfield was a director in the National Company, and the referee in bankruptcy and the district court have found that the National Company was then insolvent, and that Butterfield knew it to be so. The evidence fully warrants these conclusions, and they meet our approval. The validity of the mortgage, as to the personal property included therein is in controversy; but it appears that, even if the mortgage should be held to include all of the property, real and personal, of the National Company, it would be inadequate to pay the outstanding bonds, not including those here in question, and that the $88,000 of bonds, if allowed, would not reduce the assets of the bankrupt estate available to pay the claims of the general creditors.

"If, in view of these facts, the transfer would not be voidable as a preference under section 60b of the bankruptcy act [citing cases] ; nevertheless the title of the claimant to these bonds cannot be sustained for it would be inequitable and a fraud upon other bondholders to allow the claimant, a director of the company, to prefer himself by appropriating property of the company to secure an antecedent debt on which he was holden, at a time when the company was insolvent."

The plaintiff made demand on defendant for the payment of one-half of the amount paid by him on the notes. He demanded one-half, because both of the companies were insolvent, and McCracken, the other indorser, it was claimed, was both insolvent and re-

sided outside the jurisdiction of the court. Defendant refused to pay anything because of the release of April 6, 1911. In speaking of this release we said in *Butterfield* v. *Reynolds, supra:*

"It will be noted that the release given was of the most general kind and very broad in its terms. Taken in the light of the circumstances under which this release was drawn and the purpose for which it was executed and delivered, we think that it was intended not alone to release defendant from liability arising from his being a cosurety with plaintiff on any particular note or notes then existing, but that it was also intended to release defendant from all liability arising out of his being a cosurety on any indebtedness, as distinguished from evidence of indebtedness, existing at the time. The plaintiff testified that he did not consider either the defendant or McCracken as being financially responsible, and that he alone would probably be the one to whom the holders would ultimately look for the payment of this indebtedness, if it were not paid by the company; and he further testified that it was for the purpose of protecting himself against such contingent liability that he demanded security in the form of $88,000 of bonds of the National Boat & Engine Company, which he at the time considered ample security for all the indebtedness for which he was a surety. Having taken the security, it was only reasonable that he should release his cosureties. The claim of the plaintiff is not that the release was without consideration or that it was obtained by fraud."

In the instant case it is the claim of plaintiff that his title to or right to recover on the bonds renders the release inoperative and void. He also claims that the release of defendant was entirely voluntary, and formed no part of the transaction of the settlement. In this last claim we cannot agree with the plaintiff. There were other releases given. Mr. Butterfield not only gave a similar release to McCracken, but he himself received releases in the same form, from both of the companies. The settlement, the agreements and

the releases formed one transaction, as appear by the documents themselves, and really as testified to by the plaintiff, although he sought in the instant case to state differently. On his cross-examination the following occurred:

"Q. And, as I understand, this was one transaction, one settlement that was effected.

"A. Yes, sir."

On redirect examination he testified:

"I testified on my cross-examination that this was one transaction, one settlement. I mean by that that it was all done at the meeting in Mr. Reynolds' office of the National Boat & Engine Company. I think it was at one sitting, or an adjourned sitting of the same day."

It is the claim of the defendant that the release in question was supported by a valuable consideration, not limited to the $88,000 of bonds, and that such release was within the contemplation of the parties when they met on April 6, 1911. On April 4, 1911, the defendant wrote to the plaintiff the following letter:

"April 4, 1911.

"Mr. W. W. BUTTERFIELD,
"Muskegon, Mich.
"*Dear Will:*

"In accordance with your telephone, I enclose herewith check for $15 covering your expenses to our directors' meeting. I also inclose herewith statement of your account as it appears on the company's books. You will note from this statement that there is an overdraft of $231.16 which was allowed under the arrangements we had at the time Washburn was present with us in Ross' office, on the understanding that it should in no way prejudice our rights.

"Paul stayed over in Muskegon yesterday morning and I threshed the matter out with him again, and he absolutely refused to surrender any of his securities, so it gets down to a personal matter with me. As I have said before, I cannot and do not understand that you have any other rights than those shown by

the statement inclosed, but for the sake of good fellow-ship I am willing to sacrifice my own securities for the purpose of getting this entire matter adjusted without litigation, and the offer that I am making is made with the express understanding that I do not thereby acknowledge any of your claims, or waive any of my own rights.

"Paul not being willing to do anything in the matter, and the National Boat & Engine Company or the Racine Boat Manufacturing Company not being interested, it became necessary for me to give up my own securities, and for the purpose of getting the matter closed at this time, I propose to give you $6,000 of my own securities in the National Boat & Engine Company, divided as follows: $5,000 in the National Boat & Engine Co. 6% first mortgage gold bonds; $1,000 in National Boat & Engine Co. 7% preferred stock.

"The above to be in full settlement of your entire matter with the Racine Boat Manufacturing Co., National Boat & Engine Co., Paul or myself personally, and is to clean up all our transactions with the exception of the $5,000 note you gave to the Racine Boat Manufacturing Co., and which the National Boat & Engine Co. took over. This note, according to its agreement, is to be paid from dividends of the company, and, of course, is not collectible in any other way.

"I trust you will find it agreeable to accept this proposition and end a matter that has not been pleasant to either of us.

"I am prepared to turn the securities over to you at once.

"Yours very truly,
"W. J. REYNOLDS."

While denying that this letter had anything to do with the settlement, on cross-examination plaintiff testified:

"*Q.* Now, Mr. Butterfield, the letter has this much to do with it, does it not, that it led up and was a part of the prior negotiations that finally culminated on April 6th in the making of the agreement that has been introduced in evidence here?

"*A.* Yes."

The plaintiff also testified as follows on cross-examination:

"*Q.* Now, referring to this agreement of June 20, 1911, defendant's Exhibit D, you have already stated that the $88,000 of bonds provided for therein were deposited in escrow in May, 1911. It is a fact, is it not, that all of the terms and conditions of this agreement were complied with on both sides, that is, by you and by the other parties?

"*A.* I think so. After the making of this agreement I was not called upon to pay the $1,000 note given to the National Lumbermen's Bank mentioned in the fourth paragraph of the agreement. The $1,000 bond I put up to secure the payment of that note was the bond of a coal company, an investment bond of my own. The market value was $1,000. It was worth par. I sold it at par shortly after I got it back, and I got it back according to the terms of that agreement. It was a little longer than the terms stated, but it came back subsequently. The notes that have been introduced in evidence as well as the notes at the Hackley National Bank were all renewals of former notes given by the Racine Boat Manufacturing Company prior to January 1, 1911, or they were renewals of renewals. On the face of the note the Racine Boat Manufacturing Company was the principal debtor. The consideration for the original notes was money that went to that corporation. The National Boat & Engine Company took over the property and the assets and assumed the obligations of the Racine Boat Manufacturing Company on January 1, 1911, I believe. At that time Mr. Reynolds and Mr. McCracken and myself owned about 90 per cent. of the common stock of the Racine Boat Manufacturing Company. For our stock in the Racine Boat Manufacturing Company we got stock and bonds of the National Boat & Engine Company. I can't say offhand how much preferred stock I had. It is in the record somewhere. I don't remember just what it is. I haven't referred to it in a long while.

"*Q.* Now you received, did you not, $3,650 in bonds, $14,770 in preferred stock, and $184,270 common stock?

"*A.* I couldn't say now, but it is about that propor-

tion. I don't remember the figures. In addition to the $88,000 of bonds that were placed in escrow with Cross, Vanderwerp, Foote & Ross on my surrender of the trust deed I was not only protected on my personal note of $1,000 and received back my $1,000 bond of the coal company,' but I also received $6,750 in bonds of the National Boat & Engine Company that were turned over to me by Mr. Reynolds.".

Assuming, without deciding, that the failure of plaintiff's title to the $88,000 bonds, by reason of the subsequent bankruptcy of the National Company, and plaintiff's relation to it, operated as a failure of consideration in so far as the bonds were concerned, we are of the opinion that there was ample valid consideration for the giving of the release in question. We need only refer to the $1,000 bond and the plaintiff's release on the $1,000 note and the releases which he received from both of the companies. According to plaintiff's testimony, he did not consider the defendant financially responsible. He had a right to release him for a small consideration. No fraud is claimed; and it was early held in this State that, if there are several considerations, and some fail, yet if the others are good and sufficient, the good will sustain the promise. *Wesleyan Seminary* v. *Fisher,* 4 Mich. 515; *Alderton* v. *Williams,* 139 Mich. 296, 299 (102 N. W. 753). The adequacy of consideration is not involved here. 6 Am. & Eng. Enc. Law (2d Ed.), pp. 694, 780; 9 Cyc. p. 365; 34 Cyc. p. 1053.

The following language is pertinent here, as relating to the release:

"The language is plain and intelligible, and its meaning and effect could not be misunderstood by any person of ordinary intelligence, and, unless the plaintiff was induced to sign it by the fraud of the defendant, or it was wholly without consideration, it is binding upon the plaintiff, and he cannot recover if he signed the paper deliberately, with full knowledge of

its contents, or not under the influence of any mistake," etc. *Averill* v. *Wood,* 78 Mich. 342, 354 (44 N. W. 381, 385).

·We think the trial court reached the right conclusion, and the decree below is affirmed, with costs to the defendant.

KUHN, C. J., and OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.